Donald ARGYLE, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (JOHN J. KANE
McKEESPORT REGIONAL CEN-
TER AND UPMC WORK PARTNERS
CLAIMS MANAGEMENT), Respon-
dents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 20, 2011.

Decided Sept. 2, 2011.

Publication Ordered Nov. 10, 2011.

Rolf Patberg, Pittsburgh, for petitioner.

Bradley R. Andreen, Pittsburgh, for respondent Allegheny County.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Donald Argyle (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated December 15, 2010, which affirmed the decision of Workers' Compensation Judge (WCJ) Linda F. Tobin. WCJ Tobin denied Claimant's petition to modify compensation benefits, finding that Claimant failed to establish that his work-related injury resolved into a specific loss under Section 306(c) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 513.[1] For the reasons that follow, we affirm.

On March 31, 1993, Claimant sustained a work-related injury to his right wrist while employed by John J. Kane McKeesport Regional Hospital (Employer). Employer issued a notice of compensation payable on April 22, 1993, describing the work-related injury as a "Sprain Right Wrist," and Claimant began receiving temporary total disability benefits. (Reproduced Record (R.R.) at 299.) Thereafter, Claimant underwent multiple medical procedures to alleviate pain, including a fusion of his right wrist on January 12, 1995. Claimant returned to work in a light duty capacity for a period, but ceased working sometime in 1998, complaining that he was unable to perform his assigned work responsibilities.

On November 2, 1998, Claimant filed a petition to reinstate compensation benefits, alleging that his work-related injury resolved into a specific loss of his right forearm and/or hand (hereinafter referred to as "1998 reinstatement petition"). Employer filed a responsive answer, denying the material allegations of Claimant's petition. On October 25, 1999, Employer filed a petition to suspend compensation benefits, alleging that Claimant had refused to return to light duty (hereinafter referred to as "1999 suspension petition"). Claimant filed an answer, denying that he was capable of performing Employer's offered light duty position. Claimant's 1998 reinstatement petition and Employer's 1999 suspension petition were consolidated, and WCJ David Torrey conducted a hearing. By decision issued February 18, 2000, WCJ Torrey denied both petitions. Concerning Claimant's 1998 reinstatement petition, WCJ Torrey determined that Claimant failed to establish that his work-related injury resolved into a specific loss of his right forearm and/or hand. With regard to Employer's 1999 suspension petition, WCJ Torrey determined that Employer's offered light duty position was not within Claimant's physical limitations. Claimant did not appeal WCJ Torrey's decision.[2]

---

1. Section 306(c) of the Act provides, in pertinent part:

 For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

 (1) For the loss of a hand, sixty-six and two-thirds per centum of wages during three hundred thirty-five weeks.
 (2) For the loss of a forearm, sixty-six and two-thirds per centum of wages during three hundred seventy weeks.

2. Employer later filed a suspension petition,

On December 10, 2008, Claimant filed a petition to modify compensation benefits alleging, as before, that his work-related injury resolved into a specific loss of his right forearm and/or hand. Employer filed an answer, denying the material allegations of Claimant's petition, and the matter was assigned to WCJ Tobin.

In support of his modification petition, Claimant presented his own deposition testimony, taken February 19, 2009, and testified at a hearing before WCJ Tobin on June 30, 2009. Claimant testified by deposition that he makes absolutely no use of his right hand, except in emergency situations, because of the pain. (R.R. at 163, 172.) Claimant described the pain he feels as a toothache, and stated that if he uses his right hand, he experiences swelling from the bottom of the wrist up to the knuckles, which persists for about a week. (R.R. at 166–67.) Claimant testified that he had not undergone any surgical intervention since he testified in support of his 1998 reinstatement petition, and that he had been treating his pain with prescription pain medication until October 17, 2008, when he attempted suicide by overdose.[3] (R.R. at 163–65.) Claimant further testified that since the January 12, 1995 wrist fusion, he is able to move his right wrist from side to side, but not up and down. On cross-examination, Claimant testified

that his pain has been constant since the date of his work-related injury, and that the only change in his condition since he testified in support of his 1998 reinstatement petition has been a loss in strength. (R.R. at 178–79.)

At the June 30, 2009 hearing before WCJ Tobin, Claimant allowed WCJ Tobin to observe the physical condition of his right arm, and Claimant again testified that he tries not to use his right hand because of the pain. (R.R. at 134–35.) Claimant explained that the pain is "pretty unbearable" without the use of pain medication. (R.R. at 135.) On cross-examination, Claimant agreed that, "[b]asically," there has been no change in his condition since he testified in support of his 1998 reinstatement petition. (R.R. at 135.)

Claimant also presented the June 5, 2009 deposition testimony of William M. Swartz, M.D., a board certified hand surgeon, who examined Claimant on May 5, 2009. Regarding his physical findings, Dr. Swartz testified that: Claimant had full range of motion in his right shoulder; Claimant had full flexion and extension in his right elbow; Claimant's right wrist "was fused at 20 degrees of extension, which is considered a position of function"; Claimant's fingers had a "little less than full flexion"; Claimant was able to touch his thumb to the tip of his fifth finger; and

alleging that Claimant had voluntarily withdrawn from the workforce. By decision issued July 11, 2001, WCJ Kathleen Vallely denied Employer's petition, determining that Claimant had not withdrawn from the labor market because Claimant was willing to return to work and was in the process of seeking employment. Subsequently, on October 9, 2001, Employer filed a modification petition alleging that Claimant had failed to follow up in good faith on job referrals that were within Claimant's physical limitations (hereinafter referred to as "2001 modification petition"). By decision issued September 17, 2002, WCJ David Henry granted Employer's 2001 modification petition, modifying Claim-

ant's entitlement to compensation to partial disability benefits. WCJ Henry determined that Employer met its burden to prove that it made valid job referrals within Claimant's physical limitations and that Claimant failed to demonstrate that he followed up on Employer's job referrals in good faith.

3. Explaining his attempted suicide, Claimant testified that the pain medication "messed with [him] mentally," and that although he has been in constant pain since going off his pain medication, he is feeling better mentally. (R.R. at 172.)

Claimant's "grip strength measured with a Jamar grip meter was 40 pounds on the right compared to 95 pounds on the left." (R.R. at 5–6.) Dr. Swartz opined within a reasonable degree of medical certainty that Claimant, "based on his descriptions of his pain with use of the arm and the wrist fusion that he has performed, has lost the use of his upper extremity for all practical intents and purposes, and more specifically his hand and wrist." (R.R. at 8.) Dr. Swartz further opined that Claimant's loss is permanent, and that there is no more surgery that would improve Claimant's condition. (R.R. at 8.)

On cross-examination, Dr. Swartz agreed that Claimant's condition has remained essentially the same since the 1998 reinstatement petition. (R.R. at 13, 17.) Dr. Swartz opined that Claimant's specific loss of his right wrist dates back to the wrist fusion performed on January 12, 1995, and that Claimant's specific loss of his right hand is a function of pain, which also dates back to the January 12, 1995 wrist fusion. (R.R. at 10–11.) Dr. Swartz acknowledged that there was not a significant difference between his physical findings concerning Claimant and those of Employer's medical expert. (R.R. at 15.) Dr. Swartz further acknowledged that his examination did not reveal any actual objective evidence supporting a finding of loss of use, explaining that his opinion was based solely on Claimant's subjective representations. (R.R. at 17–18.) Finally, Dr. Swartz acknowledged that there was not a significant difference between Claim-ant's grip strength as of May 5, 2009, and Claimant's grip strength during the 1998 reinstatement petition, and that an individual with Claimant's grip strength is capable of performing "activities of daily living or sedentary use of the hand." (R.R. at 21.)

Finally, Claimant presented the March 29, 2006 and February 19, 2007 IME reports of Stephen M. Thomas, M.D. (Dr. S. Thomas), who examined Claimant on February 17, 2006, and December 22, 2006, respectively. Dr. S. Thomas opined within a reasonable degree of medical certainty that Claimant lost the use of his right wrist for all practical intents and purposes. (R.R. at 146, 153.)

In opposition, Employer presented Dr. S. Thomas's January 24, 2007 addendum to his January 19, 2007 IME report, in which Dr. S. Thomas clarified that it was his opinion that Claimant's loss of use of his right wrist dated back to the January 12, 1995 wrist fusion. (R.R. at 195.) Employer argued that Dr. S. Thomas's opinion was incompetent and barred by principles of *res judicata* because it contradicted the finding of fact established in WCJ Torrey's February 18, 2000 decision that Claimant had not sustained a specific loss as of November 2, 1998. (R.R. at 140.)

Employer also presented, *inter alia*,[4] the June 25, 2009 deposition testimony of Marc J. Adelsheimer, M.D., a board certified physician in physical medicine and rehabilitation, who examined Claimant on

---

4. In addition, Employer presented the April 9, 2002 deposition testimony of Dr. Adelsheimer, which was previously offered in support of Employer's 2001 modification petition, (*see* R.R. at 33–59), and the November 2, 1999 deposition testimony of Victor J. Thomas, M.D. (Dr. V. Thomas), a board certified orthopedic surgeon, which was previously offered in opposition to Claimant's 1998 reinstatement petition and in support of Employer's 1999 suspension petition, (*see* R.R. at 201–29). WCJ Henry credited Dr. Adelsheimer's April 9, 2002 deposition testimony in granting Employer's 2001 modification petition, (Supplemental Reproduced Record (Supp. R.R.) at 12b–20b), and WCJ Torrey credited Dr. V. Thomas's November 2, 1999 deposition testimony in denying Claimant's 1998 reinstatement petition, (Supp. R.R. at 1b–11b).

September 27, 2000, December 14, 2004, and March 5, 2009. Dr. Adelsheimer testified that Claimant's physical condition did not change significantly between his September 2000 and March 2009 examinations, and that his physical findings were consistent with those made by Dr. V. Thomas during resolution of Claimant's 1998 reinstatement petition. (R.R. at 261, 264.) Dr. Adelsheimer further testified that he did not note a loss in Claimant's strength, explaining that Claimant's grip strength testing remained fairly consistent over the years. (R.R. at 271.) Dr. Adelsheimer opined within a reasonable degree of medical certainty that Claimant had not lost the use of his right hand, wrist, or forearm for all practical intents or purposes. (R.R. at 265.)

By decision issued March 2, 2010, WCJ Tobin denied Claimant's modification petition. WCJ Tobin determined that Claimant failed to sustain his burden of establishing that his work-related injury resolved into a specific loss of his right forearm and/or hand. In so determining, WCJ Tobin credited Dr. Adelsheimer's testimony over that of Dr. Swartz, noting that Dr. Adelsheimer was in a better position to assess whether Claimant's condition changed since resolution of the 1998 reinstatement petition. WCJ Tobin credited Claimant and Dr. Swartz only to the extent that their testimony did not conflict with Dr. Adelsheimer's testimony. WCJ Tobin further determined that Claimant's modification petition must be denied under the principles of *res judicata* and collateral estoppel. WCJ Tobin stated:

It was already adjudicated that the claimant did not have a specific loss of use in prior litigation. It is found as

fact that there has not been a material change in the claimant's condition. Thus, the claimant is essentially attempting to relitigate an issue which has already been decided.

. . . .

. . . The opinion of Dr. Adelsheimer comports with the prior opinion of Dr. [V.] Thomas, which formed the basis of [WCJ Torrey's February 18, 2000] Decision and Order . . . concerning this same issue. The claimant is collaterally estopped from relitigating the same issue without having demonstrated any change in condition. The opinions of Dr. Swartz as well as Dr. [S.] Thomas as to any specific loss dating back to January 12, 1995 are likewise found as incompetent as they conflict with established prior findings of fact that the claimant did not have a specific loss of use as of November 2, 1998 or as of November 7, 2000.

(R.R. at 103.)

Claimant appealed WCJ Tobin's decision to the Board. By decision issued December 15, 2010, the Board affirmed. Claimant now petitions this Court for review.

On appeal,[5] Claimant argues that the Board and WCJ Tobin erred in finding that he failed to satisfy his burden of establishing that his work-related injury resolved into a specific loss of his right forearm and/or hand. We disagree.

■ In *Jacobi v. Workers' Compensation Appeal Board (Wawa, Inc.)*, 942 A.2d 263 (Pa.Cmwlth.2008), this Court discussed the standard for determining whether a work-related injury has resolved into a specific loss. We stated:

When a claimant alleges that his injury has resolved into a specific loss, he

---

5. This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

has the burden of proving that he has *permanently lost the use of his injured body part for all practical intents and purposes.* A specific loss requires more than just limitations upon an injured worker's occupational activities; a loss of use for all practical intents and purposes requires a more crippling injury than one that results in a loss of use for occupational purposes. However, it is not necessary that the injured body part be one hundred percent useless in order for the loss of use to qualify as being for all practical intents and purposes. Whether a claimant has lost the use of a body part, and the extent of that loss of use, is a question of fact for the WCJ. Whether the loss is for all practical intents and purposes is a question of law. *Id.* at 267–68 (emphasis added) (citations omitted). In order for a claimant to establish that his loss of use is permanent and for all practical intents and purposes, the claimant must present medical evidence. *Id.* at 269.

 Here, Claimant attempted to satisfy his burden of proof by presenting the testimony of Dr. Swartz. WCJ Tobin, however, found Employer's medical witness, Dr. Adelsheimer, to be more credible and convincing. Dr. Adelsheimer opined that Claimant has not lost the use of right hand, wrist, or forearm for all practical intents and purposes. (R.R. at 265.) "The law is well settled that the WCJ, as fact finder, has exclusive power over questions of credibility and evidentiary weight, that the WCJ may reject the testimony of any witness in whole or in part, and that such determinations are not subject to appellate review." *Potere v. Workers' Comp. Appeal Bd. (Kemcorp),* 21 A.3d 684, 690 (Pa. Cmwlth.2011).

 Even if WCJ Tobin had rejected Dr. Adelsheimer's testimony, Claimant's medical evidence would still be insufficient to satisfy Claimant's burden of proof because the opinions of Claimant's medical experts regarding specific loss are not competent. "Where the foundation for the medical evidence is contrary to the established facts in the record, or is based on assumptions not in the record, the medical opinion is valueless and not competent." *Indiana Floral Co. v. Workers' Comp. Appeal Bd. (Brown),* 793 A.2d 984, 990 (Pa. Cmwlth.2002) (quotations and citations omitted). Here, Dr. Swartz opined that Claimant's loss of use of his right wrist dated back to the January 12, 1995 wrist fusion, and that Claimant's loss of use of his right hand was a function of pain, which also dated back to the January 12, 1995 wrist fusion. (R.R. at 10–11.) Likewise, in the January 24, 2007 addendum to his January 19, 2007 IME report, Dr. S. Thomas opined that Claimant's loss of use of his right wrist dated back to the January 12, 1995 wrist fusion. (R.R. at 195.) The opinions of Dr. Swartz and Dr. S. Thomas are directly contrary to a fact established in WCJ Torrey's February 18, 2000 decision, *i.e.,* that "[C]laimant [did] not ... suffer[ ] the complete loss of use, for all practical intents and purposes, of his right forearm and/or hand" as of November 2, 1998. (Supp. R.R. at 9b.) The opinions of Dr. Swartz and Dr. S. Thomas, therefore, are not competent. Accordingly, Claimant failed to satisfy his burden of establishing that his work-related injury resolved into a specific loss of his right forearm and/or hand.

Furthermore, Claimant failed to establish that his physical condition changed since WCJ Torrey's February 18, 2000 decision. Section 403(a) of the Act, 77 P.S. § 772, provides that a claimant's benefits may be modified "upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the sta-

tus of any dependent has changed." In *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 591 Pa. 490, 919 A.2d 922 (2007), our Supreme Court addressed a situation where, as here, a party sought a modification of benefits based upon a change in the employee's physical disability subsequent to a workers' compensation proceeding that established the nature and extent of the employee's work-related injury. Determining that the party seeking a modification of benefits must first present medical evidence demonstrating that the employee's current physical condition is different than it was at the time of the preceding disability adjudication, the Supreme Court explained:

> In order to [modify] benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. Only then can the workers' compensation judge determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. Further, by natural extension it is necessary that, where there have been prior petitions to modify or terminate benefits, the employer must demonstrate a change in physical condition since the last disability determination. Absent this requirement a disgruntled employer (or claimant) could repeatedly attack what he considers an erroneous decision of a referee by filing petitions based on the same evidence ad infinitum, in the hope that one referee would finally decide in his favor.

*Id.* at 497–98, 919 A.2d at 926 (quotations omitted). Accordingly, under *Lewis,* in order to maintain his modification petition, Claimant had the burden to prove, through the presentation of medical evidence, that his condition changed after WCJ Torrey's February 18, 2000 decision. In other words, "[Claimant]'s case had to begin with the adjudicated facts found by [WCJ Torrey] ... and work forward in time to show the required change." *Folmer v. Workers' Comp. Appeal Bd. (Swift Transp.)*, 958 A.2d 1137, 1143–44 (Pa. Cmwlth.2008).

Here, WCJ Tobin specifically found as fact that there has not been a material change in Claimant's physical condition since WCJ Torrey's February 18, 2000 decision. This finding is supported by substantial evidence in the record. First, not only are the opinions of Dr. Swartz and Dr. S. Thomas regarding specific loss not competent, but they also do not establish the required material change because they dated Claimant's loss of use to before Claimant's 1998 reinstatement petition. Next, Dr. Adelsheimer testified that his physical findings for Claimant were consistent with those made by Dr. V. Thomas during resolution of Claimant's 1998 reinstatement petition, and that Claimant's physical condition did not change significantly between his September 27, 2000 and March 5, 2009 examinations. (R.R. at 261, 264.) Finally, and perhaps most important, Dr. Swartz acknowledged on cross-examination that there was not a significant difference between his physical findings and those of Dr. Adelsheimer, and that Claimant's physical condition has remained essentially the same since resolution of the 1998 reinstatement petition.[6]

---

**6.** Claimant testified on cross-examination during his February 19, 2009 deposition that the only change in his physical condition

since he testified in support of his 1998 reinstatement petition has been a loss in strength. (R.R. at 178–79). Beside the fact that Claim-

(R.R. at 13, 15, 17.) Claimant, therefore, failed to demonstrate a change in his physical condition.

Accordingly, we affirm.

### ORDER

AND NOW, this 2nd day of September, 2011, the order of the Workers' Compensation Appeal Board (Board), dated December 15, 2010, is hereby AFFIRMED.

ant's testimony does not constitute medical evidence, Dr. Adelsheimer testified that he did not note a loss in strength, and both Dr. Swartz and Dr. Adelsheimer testified that Claimant's grip strength has remained fairly consistent since resolution of Claimant's 1998 reinstatement petition. (R.R. at 21, 271.) In addition, Claimant testified on cross-examination during the June 30, 2009 hearing before WCJ Tobin that, "[b]asically," there has been no change in his condition since he testified in support of his 1998 reinstatement petition. (R.R. at 135.)