IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Haugh,              :
          Petitioner      :
                      :
       v.                :   No. 583 C.D. 2020
                      :   SUBMITTED: December 4, 2020
Workers' Compensation Appeal   :
Board (Carrier Corporation and   :
New Hampshire Insurance       :
Company c/o AIG),          :
          Respondents   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED: January 26, 2021

James Haugh (Claimant) petitions for review of the May 29, 2020 Order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting Carrier Corporation's (Employer) Petition to Terminate Workers' Compensation Benefits (Petition to Terminate) under Section 413 of the Workers' Compensation Act (Act).[2] The issue on appeal is whether Employer was precluded from presenting evidence that Claimant had recovered from his work injury after a prior WCJ determined that Claimant's work injury required lifelong, light-duty restrictions. After review, we affirm the Board's Order.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772 (relating to a petition to terminate benefits "upon proof that the disability of an injured employe has . . . finally ceased")

## I.    Background

On July 15, 2015 Claimant filed his claim petition seeking workers' compensation (WC) benefits from a work-related injury arising on October 1, 2014. Certified Record (C.R.) at 235.  Claimant has worked in heating, ventilation, and air conditioning (HVAC) since 1988 and began working for Employer on July 1, 2013. *Id.* at 236.  Much of Claimant's work involved servicing industrial chillers used in air conditioning.  *Id.*  The chillers are quite tall and Claimant's work required extensive use of his arms at or above shoulder height and involved lifting significant weight.  *Id.*  Shortly after beginning work for Employer, Claimant began to experience fatigue in his arms; by January 2014 this fatigue eventually worsened into pain "akin to a toothache" and began interfering with his sleep.  *Id.*  He began using his left hand to work, because he could not use his right arm.  *Id.*  Claimant's primary care physician referred him to Dr. Mark Rodosky in July 2014, and he underwent surgery on October 2, 2014.  *Id.*  In his claim petition, Claimant alleged his injury as

> an aggravation of bilateral glenohumeral [(shoulder)] arthritis, right worse than left, and associated soft tissue problems including: synovitis, partial tears of the labrum and rotator cuff, frozen shoulder and impingement syndrome attributable to cumulative trauma as the result of repetitive work activities involving [Claimant's] upper extremities.

*Id.* at 235.

On December 12, 2017, WCJ Alfred Benedict (WCJ Benedict)[3] awarded Claimant workers' compensation benefits. *Id.* at 246.  In reaching his decision, WCJ Benedict found that Claimant suffered a work-related injury; specifically, he found

---

[3] Because two different WCJs issued decisions in this case, we refer to each WCJ herein by name.

that "Claimant had preexisting glenohumeral arthritis that was substantially aggravated by his work at [Employer] making it symptomatic to the point where he could not tolerate it." *Id.* at 239. This aggravation of Claimant's existing arthritis was caused by heavy lifting and repetitive work. *Id.* at 238-39. WCJ Benedict credited the testimony of Claimant's treating physician, Dr. Rodosky, who testified that due to the injury, Claimant would be placed on permanent, light-duty restrictions that would last the remainder of his life. *Id.* at 238.

Employer's medical expert, Dr. Victor Thomas, testified that Claimant's work for Employer could not have aggravated his glenohumeral arthritis, and instead any symptoms or pain was the natural progression of the disease. *Id.* at 242-43. WCJ Benedict found Dr. Thomas's testimony less credible and persuasive than Dr. Rodosky's and awarded Claimant WC benefits. *Id.* at 243-44.

On May 5, 2017, Employer filed its Petition to Terminate, after which WCJ Jeffrey Russell (WCJ Russell) held multiple hearings and issued an opinion on July 9, 2019. *Id.* at 40, 96. At the termination hearing, Claimant testified that he still experienced "symptoms that range from fatigue to a dull ache and occasionally sharp, shooting pain," and that he takes over-the-counter pain medication. *Id.* at 86-87. He underwent replacement surgery on his right shoulder in October 2017 and plans to have the same procedure on his left shoulder. *Id.* at 88. Although the surgery alleviated some pain, he still has limited range of motion and the same light-duty restrictions. *Id.* at 87.

Claimant presented the deposition testimony of Dr. Rodosky, who explained that the work-related injury led to an arthritic overloading and quicker breakdown of the cartilage in his shoulder joints. *Id.* at 88. This overloading, coupled with the cartilage's limited ability to repair itself and aggravating injury, led Dr. Rodosky to

3

opine that the work injury accelerated Claimant's underlying pathology and symptoms that resulted in the right shoulder replacement. *Id.* Thus, Dr. Rodosky opined that the work injury resulted in permanent damage to the cartilage in Claimant's shoulder joints, worsening his arthritic progression. *Id.* at 87-88.

Employer presented the deposition testimony of Dr. Michael Seel, who testified that he reviewed Claimant's medical records and was aware of WCJ Benedict's decision recognizing Claimant's work-related injury as an aggravation of his preexisting arthritis. *Id*. at 88. Dr. Seel examined Claimant on April 18, 2017, and opined that he had recovered from the acknowledged work injury. *Id.* at 89. Dr. Seel noted that Claimant's records indicated he was at maximum medical improvement and had been discharged from Dr. Rodosky's care in 2016, directed to return only as needed. *Id.* Dr. Seel further opined that Claimant's right shoulder surgery in 2017 was not related to the work injury, because the aggravation of his arthritis caused no permanent damage to the cartilage, so the work injury did not affect the natural progression of his arthritis. *Id.* Thus, Dr. Seel opined that any remaining pain and disability were a result of the natural arthritic progression and not related to the aggravation of his arthritis. *Id.* at 88-89.

Following the hearings, WCJ Russell granted Employer's Petition to Terminate. In reaching his decision, WCJ Russell found Dr. Seel more credible than Dr. Rodosky. *Id.* at 93-94. WCJ Russell noted that WCJ Benedict never found that Claimant sustained irreversible damage to the cartilage in his shoulders. *Id.* at 93. WCJ Russell distinguished between the permanency of the *restrictions* and the permanency of the *injury*, stating: "While the limitations were deemed permanent, no testimony was elicited that Claimant had permanent and irreversible cartilage damage due to the injury." *Id.* WCJ Russell noted WCJ Benedict found that the

4

work injury was an aggravation of arthritis to the point of symptoms, "rather than an alteration of the arthritic pathology." *Id.* at 93. WCJ Russell concluded that "[a]ny restrictions, complaints, and need for treatment on or after April 18, 2017 would be a result of the pre-existing arthritic condition of the shoulders and not the work injury." *Id.* at 95.

Claimant timely appealed to the Board, which affirmed WCJ Russell's decision. *Id.* at 106. In his appeal to the Board, Claimant argued that WCJ Russell mischaracterized Dr. Rodosky's testimony and inappropriately redefined the work injury as found by WCJ Benedict. *Id.* at 109-10. Claimant also asserted that Dr. Seel's testimony was incompetent because WCJ Benedict found permanent damage to Claimant's cartilage. *Id.* at 110. The Board, however, rejected these claims, noting that "at no point did WCJ Benedict find that Claimant sustained irreversible cartilage damage and at no point did Dr. Rodosky testify to that." *Id.* at 114. Instead, "Dr. Rodosky indicated that the aggravation was symptomatic rather than an alteration of pathology." *Id.* The Board concluded:

> [WCJ Russell] did not mischaracterize Dr. Rodosky's testimony. Nor did he redefine the nature of the injury or misconstrue the findings in the prior adjudication. Claimant's arguments, while phrased as substantive challenges, are essentially challenges to the WCJ's credibility determinations. However, rendering credibility determinations is the quintessential function of the fact finder. *Kasper v. Workers' Comp. Appeal Bd. (Perloff Bros., Inc.)*, 769 A.2d 1243, 1246 (Pa. Cmwlth. 2001). In reviewing credibility determinations, substantial deference is due. *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

*Id.* at 115. This appeal followed.

5

## II.    Issue

On appeal,[4] Claimant asserts that because WCJ Benedict found that his work injury required lifelong restrictions, WCJ Russell was precluded from finding that Claimant had fully recovered from his work injury. Claimant argues that WCJ Russel erred in granting Employer's Petition to Terminate because WCJ Benedict's findings established that Claimant had permanent, irreparable damage to the cartilage in his shoulders stemming from the aggravation of his arthritis. Claimant's Br. at 13-15. Claimant contends that because he suffered a permanent, irreparable injury, Dr. Seel could not testify, nor could WCJ Russell find, that Claimant had recovered from this injury. *Id.* at 18-20. Employer responds that WCJ Benedict's findings do not establish permanent and irreparable damage to the cartilage and instead acknowledged Claimant's arthritis as predating the work injury. Employer's Br. at 14. Accordingly, WCJ Russell could find that Claimant had recovered from his work injury, which was merely the aggravation of his arthritis to the point it became symptomatic. Employer's Br. at 17.

## III.    Analysis

To support a termination of WC benefits, the employer must establish that the claimant has fully recovered from his work injury and that any remaining disability

---

[4] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 605 n.6 (Pa. Cmwlth. 2018). As fact finder, the WCJ has exclusive power over questions of credibility and evidentiary weight; the WCJ may reject the testimony of any witness in whole or in part. *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690 (Pa. Cmwlth. 2011). The WCJ's findings of fact will not be disturbed as long as they are supported by substantial, competent evidence in the record. *Supervalu, Inc. v. Workers' Comp. Appeal Bd. (Bowser)*, 755 A.2d 715, 720 (Pa. Cmwlth. 2000). "Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jacobi v. Workers' Comp. Appeal Bd. (Wawa, Inc.)*, 942 A.2d 263, 268 n.7 (Pa. Cmwlth. 2008).

6

is no longer the result of the work injury. *Benson v. Workmen's Comp. Appeal Bd. (Haverford State Hosp.)*, 668 A.2d 244, 247 n.4 (Pa. Cmwlth. 1995). Essential to this determination is the nature of the workplace injury first adjudicated. Claimant contends that WCJ Benedict found he suffered a permanent, irreparable injury, and therefore, any testimony that he recovered from this permanent injury is incompetent. Claimant's Br. at 18-20. Claimant relies on *Argyle v. Workers' Compensation Appeal Board (John J. Kane McKeesport Regional Center)*, 33 A.3d 667, 672 (Pa. Cmwlth. 2011), for the proposition that "medical evidence is legally incompetent when it is contrary to a fact established in a prior adjudication." While this is a correct statement of the law, we conclude that *Argyle* is factually distinguishable from this case.

In *Argyle*, the claimant sought modification of WC benefits in 2008, alleging that his workplace injury had resolved into a specific loss of the use of his right hand. *Id.* at 668. The claimant's doctors testified that the claimant lost the complete use of his right hand in January 1995. *Id.* at 670. However, the doctors' testimony was directly contrary to the "fact established in WCJ Torrey's February 18, 2000 decision, *i.e.*, that '[C]laimant [did] not . . . suffer[ ] the complete loss of use, for all practical intents and purposes, of his right forearm and/or hand' as of November 2, 1998." *Id.* at 672. Because the doctors' testimony was directly contradictory to the prior adjudication, such testimony was deemed incompetent to support a modification of the claimant's WC benefits. *Id.*

Unlike *Argyle*, however, WCJ Benedict did not specifically find that Claimant's work injury was permanent. Rather, WCJ Benedict found that Claimant "had pre-existing arthritis that was substantially aggravated by his work at Carrier[,] making it symptomatic to the point where he could not tolerate it." C.R. at 239. To

7

the extent that WCJ Benedict noted any permanency, he was referring to the *light-duty restrictions* that Dr. Rodosky opined "would last the remainder of Claimant's life." *Id.* at 238. Thus, Dr. Seel's subsequent testimony that the aggravation to Claimant's pre-existing arthritis had been alleviated as of April 18, 2017 is not contrary to the prior adjudication.

Claimant also contends that WCJ Benedict found permanent, irreparable damage to his shoulder cartilage.[5] Claimant's Br. at 15-16. With respect to Claimant's shoulder cartilage, Dr. Rodosky testified that cartilage is like a Teflon coating "that loses the ability to repair itself." C.R. at 238. Dr. Rodosky further explained:

> [W]hen you start to get damage of it, and you increase the load on it, it damages more. It just keeps being damaged without repairing itself. So, it stands to reason that any high loads . . . and more repetitive nature of it, it adds up to more destruction.

*Id.* at 239. This overloading led to the substantial aggravation of Claimant's arthritis to the point it became symptomatic. *Id.* The permanent, light-duty restrictions were ordered to prevent further degradation of Claimant's arthritic condition. *See id.* at 354-55. These restrictions do not equate to a finding of irreparable injury; rather, the record shows that the restrictions were intended as a preventative treatment against future injury. *See id.* at 355. Furthermore, in both his original and subsequent depositions, Dr. Rodosky acknowledged that cartilage has a limited ability to repair

---

[5] Claimant also argues that WCJ Benedict described the injury in two parts, "aggravation of bilateral glenohumeral arthritis," **and** "associated soft tissue problems," and this division is indicative of WCJ Benedict finding permanent damage to the soft tissue. Claimant's Br. at 15-16. We reject this argument because Claimant alters the quoted language by replacing the comma with a semicolon to divide the quote into two parts. It is evident from the plain language of WCJ Benedict's decision that the soft tissue problems are associated with the arthritis aggravation. *See* C.R. at 235. Even if they are viewed as two separate injuries, however, there was still no testimony or finding that they are irreparable.

8

itself. *Id.* at 350-51 (comparing cartilage to brain tissue that "doesn't recover well.") (deposition before WCJ Benedict); *id.* at 446, 448 ("[Cartilage is] a highly specialized tissue, like brain tissue, that has very little ability to repair itself.") (deposition before WCJ Russell). Because WCJ Benedict never found Claimant's injury to be permanent or irreparable, Dr. Seel's testimony that Claimant had recovered from the injury was not contrary to the prior adjudication or otherwise incompetent.[6]

## IV. Conclusion

WCJ Benedict found the work-related injury that Claimant suffered was a substantial aggravation of his preexisting arthritis. C.R. at 239. Because WCJ Benedict never found Claimant's work-related injury permanent or irreparable, Dr. Seel could competently testify that Claimant had recovered from this aggravation and that any remaining disability was due to the gradual progression of his preexisting arthritis and, thus, Claimant no longer required restrictions or medical treatment for his work injury. *Id.* at 88-89. WCJ Russell found Dr. Seel's testimony more credible than Dr. Rodosky's. *Id.* at 93. WCJ Russell also discredited Claimant's testimony that he continued to suffer from a work-related disability. *Id.* at 93. These findings are supported by substantial, competent evidence and will not be disturbed on appeal. *Valenta v. Workers' Comp. Appeal Bd. (Abington Manor*

---

[6] Claimant also argues that Dr. Seel's testimony is contrary to the record where he disagreed with Dr. Rodosky's initial prognosis that heavy, repetitive work could increase damage to cartilage. Claimant's Br. at 19-20. However, "a medical professional is not required to believe a condition existed; he is merely required to accept as true the adjudicated fact that a condition existed and opine as to whether the condition continues to exist at the time of the examination." *Folmer v. Workers' Comp. Appeal Bd. (Swift Transp.)*, 958 A.2d 1137, 1147 (Pa. Cmwlth. 2008). While Dr. Seel might have disagreed that the original injury was work-related, he nonetheless based his reasoning on the existence of the injury to opine that Claimant had recovered from it. *See* C.R. at 772-73.

9

*Nursing Home & Rehab & Liberty Ins. Co.)*, 176 A.3d 374, 382 (Pa. Cmwlth. 2017).

Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| James Haugh, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 583 C.D. 2020 |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Carrier Corporation and | : | |
| New Hampshire Insurance | : | |
| Company c/o AIG), | : | |
| Respondents | : | |

# **O R D E R**

AND NOW, this 26ᵗʰ day of January, 2021, the May 29, 2020 Order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge