538 A.2d 617

Vital Signs Institute, Inc. and Continental Insurance Co. Underwriters Adjusting Co., Petitioners v. Workmen's Compensation Appeal Board (Burke and Humetrics Corporation and Aetna Life & Casualty Company), Respondents.

192

Submitted on briefs December 15, 1987, to Judges CRAIG, DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Eugene Mattioni,* with him, *Francis X. Kelly, Mattioni, Mattioni & Mattioni, Ltd.,* for petitioner.

*Jean M. Heflin,* with her, *Peter J. Weber, Rawle & Henderson,* for respondent, Humetrics Corporation.

*Kirk T. Karaszkiewicz, Broderick & Karaszkiewicz,* for respondent. Norman Burke.

OPINION BY JUDGE CRAIG, March 1, 1988:

Petitioner Vital Signs Institute, Inc. (Vital Signs) and its insurance carrier appeal from a decision of the Workmen's Compensation Appeal Board affirming an order of a referee that directed Vital Signs or its carrier to pay compensation to respondent-intervenor Norman Burke (claimant) and that dismissed the claimant's previous employer, respondent Humetrics Corporation (Humetrics) and its carrier, Aetna Life and Casualty Company (Aetna), from the case. The principal issue before the referee and the board was whether the disabling back injury suffered by the claimant while he was working for Vital Signs was a new injury or a recurrence of an injury he suffered while working for Humetrics.

The issues on this appeal, as framed by Vital Signs, are: (1) whether as a matter of law the claimant presented competent unequivocal medical testimony on causation in view of the ordinary activity in which the claimant was involved when he was injured and in view of his history of back problems and surgery; (2) whether the referee erred by excluding medical records that "impeached claimant's testimony" that a new injury occurred and by excluding evidence relating to the execution of a final receipt signed by the claimant in favor of his previous employer's insurance carrier; (3) whether the referee violated the rules on joinder by failing to consider whether the final receipt in favor of the former employer's carrier should be set aside; and (4) whether the referee capriciously disregarded testimony that the claimant was highly desirable as an employee and that meaningful jobs were available to him despite his disabilities.

The referee found that, on or about November 5, 1981, while working at a Vital Signs office, the claimant reached above his head to pick up two cassettes. While doing so, he felt a sharp pain in his lower back and radi-

ating down his left leg. The claimant reported the incident to his manager and left work within an hour of the accident. He has not returned. Dr. Segin, the claimant's family physician, referred him to Dr. Paul Lin, a neurologist. Dr. Lin performed surgery on the claimant's spine while the claimant was hospitalized for a period of ten days beginning December 7, 1981.

On November 23, 1976, when he was working for Humetrics, the claimant had suffered an injury that resulted in surgery in December of 1976 to remove two discs from his back. The claimant's testimony indicates that he did not return to work for Humetrics after that operation, and he resigned his position with Humetrics in February of 1977. Later in 1977 the claimant began working for Vital Signs. He signed a final receipt of compensation in favor of Humetrics and Aetna for the period of his disability following the 1976 operation. The final receipt stated that he returned to work without loss of earning power on June 7, 1977.

The claimant underwent a second operation in November of 1977. His testimony indicates that his operation was for bladder and prostate problems, and that at that time he also received injections in his spine that relieved persistent pain and numbness he had been experiencing since the 1976 operation. The referee found that the claimant returned to work upon his release from the hospital in 1977 and that he worked without interruption from that time until November 5, 1981.

## 1. Medical Testimony Regarding Cause of Injury

In *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 508 Pa. 360, 498 A.2d 800 (1985), a case concerning an application by a high school gym teacher, with a history of neck problems traceable to an old football injury, for benefits for a neck injury requiring surgery that he allegedly sustained

while moving heavy gym equipment at work, the Pennsylvania Supreme Court summarized the law regarding a claimant's burden in a workers' compensation case:

> In workmen's compensation cases, the claimant has the burden of proving a causal relationship between a work-related incident and his alleged disability. Monahan v. Seeds & Durham, 336 Pa. 67, 6 A.2d 889 (1939); Miller v. Springfield Township Highway Department, 202 Pa. Super. 616, 198 A.2d 399 (1964). Where there is no obvious causal connection between an injury and the alleged cause, that connection must be established by unequivocal medical testimony. Zander v. Workmen's Compensation Appeal Board, 68 Pa. Cmwlth. 412, 449 A.2d 784 (1982). Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. Menarde v. Philadelphia Transportation Co., 376 Pa. 497, 103 A.2d 681 (1954). Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship. Bisesi v. Workmen's Compensation Appeal Board, 61 Pa. Cmwlth. 260, 433 A.2d 592 (1981).

*Lewis*, 508 Pa. at 365-66, 498 A.2d at 802.

The court then proceeded to analyze, as a matter of law, whether the claimant's medical testimony on causation was equivocal, thereby implicitly indicating that there was no "obvious causal connection" between the injury and a work-related incident, despite the strenuous activity in which the claimant was involved and the

severity and immediacy of his symptoms. The court's approach may well have been influenced by the claimant's history of neck problems and surgery.

Thus, our causation analysis on review actually involves three steps: (1) whether as a matter of law there was an "obvious causal connection" between a work-related incident and an injury; (2) if there was not, whether as a matter of law the claimant presented competent, unequivocal medical testimony of causation; and (3) if he did, whether there was substantial evidence of record to support the factual determination of causation.[1]

In view of the Supreme Court's treatment of the circumstances present in *Lewis,* involving greater physical strain than the circumstances here, we cannot say that there was an obvious causal connection between this claimant's injury and the work-related incident, given his history of back problems. The claimant implicitly did not contest this point because he attempted to present unequivocal medical evidence of causation.

In a case where a pre-existing ailment or condition is a factor, the principal point toward which the medical testimony is directed is whether the disability in question is the result of a new injury or is a recurrence of disability as a result of a previous injury. The fact that an employee was afflicted with a pre-existing physical defect or condition that rendered him or her more susceptible to injury than an entirely normal person will

---

[1] Our scope of review of an administrative agency decision is to determine whether there has been a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986); *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).

not bar recovery; it is sufficient if the later injury materially contributed to the disability, rather than the disability's resulting from the natural progress of the preexisting condition. *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979). Further, the law is clear that, if the current disability results from an "aggravation" of the previous injury, rather than from a recurrence attributable to the natural progress of the pre-existing condition, there has been a new injury, and the carrier who was insuring the employer when the aggravation occurred is the responsible carrier. *Lackawanna Refuse v. Workmen's Compensation Appeal Board (Christiano)*, 74 Pa. Commonwealth Ct. 286, 459 A.2d 899 (1983).

Thus, the second step of our review is to decide, as a matter of law, whether the medical testimony was equivocal on the distinction between "aggravation" of a pre-existing condition and "natural progression" of that condition. *Lewis* provides a good example of equivocal medical testimony. In that case, the claimant's treating physician repeatedly testified that the claimant's moving gym equipment at the school "could have been" the cause of his disability. "Statements that an assigned cause 'could have' been the cause of the condition have repeatedly been held to be legally insufficient." *Lewis*, 508 Pa. at 367, 498 A.2d at 803 (citations omitted).

In the present case, the claimant presented by deposition the medical testimony of Dr. Robert S. Segin, who had been the claimant's family physician since 1966 and who examined the claimant immediately after both his 1976 injury and the November 5, 1981, incident. Dr. Segin testified as follows concerning the cause of the 1981 incident:

> A. Yes, because I had been related with both injuries, and had understood the initial problem he had, the initial surgery he had for

his back injury, and since I was so closely associated with the second injury, I could not fit the two of them together in any manner such that I felt that this was a relationship between the first injury and the second injury.

To me, the second injury was something that had happened discreetly [sic] and immediately as of 11/5/81, in the sense that the patient at no time had been having any difficulty with his back once he had recovered fully from his initial prior surgery.

So I was satisfied that in reaching up for the reels, tape reels, was the cause of this injury that we have been discussing.

. . . .

He did not have a complete and full recovery initially of his injury. He actually—I can refer to the notes if you want the precise date, but approximately he had difficulty for about a year after the surgery. He received some spinal injections, and it was subsequent to the spinal injections that he had a recovery of the pain.

I had seen him many times after that with no pain, full ability to lift, move things, drive a car, etc., walk without limping.

And during this period of time, up until this visit that I mentioned in the office, there were no complaints of his back whatsoever.[2]

---

[2] Vital Signs contends that, because Dr. Segin currently specializes in cardiology, his medical opinion was not competent on the issue of causation of the claimant's current disability. However, this court has held that such an objection goes to the weight of the evidence, not its competence. *Kocher v. Workmen's Compensation Appeal Board (B.G. Coon Construction Co.)*, 52 Pa. Commonwealth Ct. 106, 415 A.2d 162 (1980).

In addition, the claimant presented by deposition the medical testimony of Dr. Herbert Stein, a board-certified orthopedic surgeon who examined the claimant on January 14, 1983, and conducted a review of the claimant's x-rays and medical records, concerning the cause of the 1981 incident:

A.  I felt that his symptomatology that he presented to me at the time I saw him was really due to the accident of 11/5/81.

Q.  Now, doctor, based on the reasonable medical certainty, do you have an opinion as to whether there was any causal connection between Mr. Burke's previous history of back problems and the injury which he sustained on November 5, 1981?

A.  Yes, I do.

Q.  Okay. And what is that opinion, doctor?

A.  Well, certainly he did not have a normal back to begin with, having had the previous injury in surgery, and I feel that the condition can predispose someone to having further difficulty in the future with this injury or other insult imposed on it.

Q.  Now, again based upon your reasonable and medical certainty, do you have an opinion as to whether the injury which Mr. Burke suffered on November 5, 1981 was a discreet [sic] injury or an aggravation of his prior condition as opposed to a recurrence of his prior back condition?

A.  Well, I feel that it was a discreet [sic] injury based on the history he gave me. However, I think that there is also with that injury an aggravation of a pre-existing back condition.

Unlike the qualified, tentative medical testimony, couched in terms of possibilities, that was at issue in

*Lewis,* the testimony quoted above is unambiguous and direct. We conclude as a matter of law that the claimant presented unequivocal medical testimony of causation.

The third step of the analysis is our review of the factual finding on causation actually made by the referee. "It is clear that whether a disability *results* from a new injury (here allegedly an aggravation of a prior condition) or is a recurrence of a prior work-related condition . . . is a question of fact to be determined by the referee." *Lackawanna Refuse,* 74 Pa. Commonwealth Ct. at 288, 459 A.2d at 900.

In a workers' compensation case the referee is the ultimate finder of fact. *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.),* 87 Pa. Commonwealth Ct. 436, 487 A.2d 477 (1985). Questions of evidentiary weight and credibility are left to the referee, and, in evaluating the evidence, the referee is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. Where conflicting medical testimony is offered, such conflicts are for the referee to resolve. *Cox v. Workmen's Compensation Appeal Board (Atlas Railroad Construction Co.),* 60 Pa. Commonwealth Ct. 59, 439 A.2d 1009 (1981).

Our review of a referee's factual findings is limited to determining whether they are supported by substantial evidence in the record, *see n.1, supra.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the factual conclusion drawn from that evidence. *Pittsburgh Des Moines Steel Co. v. Workmen's Compensation Appeal Board (Schaub),* 31 Pa. Commonwealth Ct. 530, 377 A.2d 833 (1977). In our view, the unequivocal medical testimony quoted above, if credited, coupled with the testimony of the claimant, might well be accepted by a reasonable mind to support a conclusion that the claimant's disabili-

ty was caused by a new injury that occurred on November 5, 1981.

## 2. *Admissibility of Vital Signs' Exhibits Excluded by the Referee*

Vital Signs contends that the referee erred by not admitting into evidence various exhibits offered by Vital Signs in these proceedings. Section 422 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §835, governs the admissibility of various forms of medical evidence; it provides in pertinent part:

> The records kept by a hospital of the medical or surgical treatment given to an employe in such hospital shall be admissible as evidence of the medical and surgical matters stated therein.
>
> Where any claim for compensation at issue before a referee involves twenty-five weeks or less of disability, either the employe or the employer may submit a certificate by any qualified physician as to the history, examination, treatment, diagnosis and cause of the condition, and sworn reports by other witnesses as to any other facts and such statements shall be admissible as evidence of medical and surgical or other matters therein stated and findings of fact may be based upon such certificates or such reports.

By expressly providing that physician's certificates are admissible in claims involving twenty-five weeks or less of disability, the legislature intended to exclude such certificates in claims involving more than twenty-five weeks of disability, such as the claim at issue here. *Young v. Workmen's Compensation Appeal Board (St. Agnes Hospital)*, 39 Pa. Commonwealth Ct. 265, 395 A.2d 317 (1978).

VS-1, VS-3, and VS-7 are letters written by the claimant's family physician, Dr. Segin, in 1977 and 1978. Vital Signs acknowledges that it used those letters at the deposition of Dr. Segin for the purpose of attempting to establish inconsistencies with his sworn testimony. Such use was proper; however, under section 422, the letters and reports may not be admitted as substantive evidence in themselves.

VS-4, VS-22 and VS-24 are letters, reports and records of Dr. Lin and of a Dr. John T. Williams, who examined the claimant in May of 1977. Again, under section 422, these doctors' certificates may not be offered as proof of the medical facts contained therein. Vital Signs argues that Dr. Lin's records indicate that a copy of VS-4, a letter from Dr. Lin to Dr. Segin, dated November 20, 1981, was sent to Nazareth Hospital for its records. However, Vital Signs did not offer VS-4 as an authenticated hospital record; hence, the referee properly excluded it.

### 3. Joinder and the Validity of the Final Receipt

Vital Signs next contends that "[p]ursuant to the rules on joinder [the referee] should have set aside the final receipt entered in behalf of Humetrics and Aetna." The referee initially dismissed Humetrics and Aetna by oral ruling on May 25, 1982, based solely on the examination of the claimant and the admission into evidence of the final receipt. However, he subsequently rejoined them after an appeal by Vital Signs elicited an opinion by the board, dated January 12, 1984, that directed the referee's attention to Rule 131.25, 34 Pa. Code §131.25, which permits any party to join another defendant as of right to assert any claim relevant to the pending petition by filing a motion for joinder.

Vital Signs appears to believe that the act of joinder, in itself, should have had the effect of setting aside the

final receipt executed by the claimant in 1977 in favor of Humetrics and Aetna regarding compensation paid to the claimant for his period of disability in 1976 and 1977. The law does not require that result. Section 434 of the Workmen's Compensation Act, 77 P.S. §1001, provides as follows:

> A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement notice or award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement notice or award: Provided, however, That a referee designated by the department may, at any time within three years from the date to which payments have been made, set aside a final receipt, upon petition filed with the department, or on the department's own motion, if it be shown that all disability due to the injury in fact had not terminated.

The current claim for disability relates to an incident on November 5, 1981, more than three years after the date of the final receipt signed by the claimant, which was September 29, 1977. The time period provided by section 434 is an absolute bar to the right to obtain additional compensation, and courts may not extend the period unless the claimant proves that the receipt was procured by means of fraud, intentional or unintentional deception, or other improper action of the employer. *Auerbach v. Workmen's Compensation Appeal Board (Auerbach)*, 80 Pa. Commonwealth Ct. 301, 471 A.2d 596 (1984).

Once they were joined as additional defendants, Humetrics and Aetna would have been subject to any liability against them that could have been proved. However, in order to find liability against these additional defendants, the referee would have had to have

found, first, that the 1981 injury was a recurrence, not a new injury, and, second, that there was fraud in obtaining the final receipt or some other legally sufficient reason for extending the three-year period after which claims against them were barred. The referee's decision on the issue of new injury versus recurrence necessarily logically preceded any decision concerning the validity of the final receipt.

Vital Signs contends that the evidence demonstrates recurrence rather than new injury, and that it was therefore harmed by rulings of the referee that hindered its efforts to establish mistake or fraud regarding the execution of the final receipt. This reasoning is backwards. Our review of the record indicates that Vital Signs received a full and fair opportunity to prove recurrence, but it failed to do so. As detailed above, the referee's finding of new injury is properly supported in the record. The referee did not dismiss Humetrics and Aetna for a second time until he made the finding of new injury. Thus the referee did not violate the rules of joinder or commit other error of law in regard to the issue of the validity of the final receipt.

### 4. Partial Versus Total Disability

Vital Signs' final contention is that the referee capriciously disregarded the testimony of its two vocational experts on the issue of whether the claimant was totally disabled, that is, whether there were other jobs available to him. In a worker's compensation case, the question of a claimant's total disability is one of fact. *4156 Bar Corp. v. Workmen's Compensation Appeal Board (Kimmelman)*, 63 Pa. Commonwealth Ct. 176, 438 A.2d 657 (1981). Once a claimant has shown by credible evidence that he no longer can perform his former work because of a work-related injury, the burden shifts to

the employer to show that the claimant can perform certain work and that such work is available. *Id.*

> The work proposed for a partially disabled claimant must be *actually* available, that is, in fact within his reach, and it must be brought to his notice by the employer. A position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence.

*Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 91 Pa. Commonwealth Ct. 543, 545-46, 498 A.2d 36, 38-39 (1985), *aff'd*, 516 Pa. 240, 532 A.2d 374 (1987).

The Pennsylvania Supreme Court recently considered in depth this question of actual availability when it reviewed the decision of this court in the case quoted immediately above. Although the Supreme Court agreed that actual availability is the proper test in a workers' compensation case, and expressly approved the above definition of actual availability, the Supreme Court criticized this court's application of the definition, stating that we had placed on the employer the unreasonably cumbersome duty of specifying every aspect of every job in question. The Supreme Court stated that it is enough that the employer produce medical evidence describing the claimant's capabilities and vocational evidence classifying the job, along with the basic description of the job in question. From such evidence, the referee must determine whether the claimant can perform the job in question; thereafter, the decision of the referee will be reviewable as a finding of fact. *Kachinski v. Workmen's Compensation Appeal Board*

*(Vepco Construction Co.)*, 516 Pa. 240, 251, 532 A.2d 374, 379 (1987).

The Supreme Court then expressly detailed the procedure governing the return to work of injured employees:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380.

The record in the present case contains evidence that the claimant is restricted from sitting or standing more than thirty minutes at a time, that he should avoid any bending, and that he is restricted from lifting anything over twenty-five pounds. The referee made the following findings of fact regarding the testimony of Vital Signs' two vocational experts:

43. The testimony of Sam Burns concerning job availability was not relevant to the Claimant's case nor credible in that it did not take into consideration the Claimant's restrictions on traveling distance and educational abilities.

. . . .

45. Dr. Walker presented a summary listing of available employment. Dr. Walker's testimony is not relevant to the Claimant's position in that it

does not conclusively state that any job set forth therein is within the Claimant's driving or physical restrictions or that any job would actually be available to a man in the Claimant's condition.

In addition, as noted by the Workmen's Compensation Appeal Board in its opinion, the record in this case contains no testimony that the claimant was notified of the availability of any of the jobs described by Vital Signs' vocational experts.

In making factual determinations, a referee is free to disregard the testimony of any witness in whole or in part. Our review of a referee's factual findings, such as on the issue of whether a claimant can perform any of the jobs described by an employer's expert, is limited to determining whether the finding was supported by substantial evidence of record (not whether the referee capriciously disregarded the testimony of any witness). In our view, the referee's finding here was supported by substantial evidence.

Accordingly, we affirm the decision of the Workmen's Compensation Appeal Board affirming the referee's decision awarding benefits to Norman Burke from defendant Vital Signs or its insurance carrier and dismissing defendant Humetrics Corporation as a party to the action.

## Order

Now, March 1, 1988, the order of the Workmen's Compensation Appeal Board, No. A-90228, dated November 21, 1986, is affirmed.