**Geraldine LOMBARDO, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (TOPPS COMPANY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 9, 1997.

Decided Aug. 6, 1997.

Reconsideration and Reargument Denied Sept. 19, 1997.

Louis A. Cimini, Scranton, for petitioner.

Ross A. Carrozza, Scranton, for respondent.

Before PELLEGRINI and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Geraldine Lombardo (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the order of the Workers' Compensation Judge (WCJ) dismissing her petition to set aside final receipt.

Claimant suffered a work related injury on April 17, 1990. She began receiving benefits pursuant to a notice of compensation payable. On September 4, 1990, Claimant signed a final receipt and returned to a light duty position with no loss of earnings. On May 23, 1991, Claimant filed a petition to set aside final receipt alleging that she signed a final receipt on September 4, 1990 even though she still suffered residual disability from her work related injury because the company nurse advised her that she would not receive her final compensation check if she failed to do so. Employer filed an answer denying Claimant's allegations and a hearing before the WCJ was held.

By order dated November 12, 1992, the WCJ dismissed Claimant's petition to set aside final receipt. On appeal by Claimant, the Board, by order dated August 15, 1994, reversed the WCJ concluding that because Claimant returned to work in a light duty position after signing the final receipt, she necessarily continued to suffer residual disability from her work-related injury. Employer appealed to this Court, and we en-

tered a memorandum opinion and order dated February 10, 1995 remanding the matter to the WCJ. We rejected the Board's conclusion that Claimant necessarily suffered residual disability from her work injury based upon her return to a light duty work position. To the contrary, we noted that Claimant's own testimony indicated that her return to light duty was because she was at the bottom of Employer's seniority list and that the light duty position, which was on the second shift, was were she was placed. Accordingly, we remanded to the WCJ for a specific credibility determination regarding the medical evidence presented since each medical expert gave differing testimony as to whether Claimant continued to suffer residual disability when she signed the final receipt. Additionally, we remanded for a definitive finding of whether Claimant's disability terminated at the time she signed the final receipt.

Following remand, the WCJ entered the following relevant findings:

5. Upon remand, after scrutiny of the expert medical opinions, we find that Dr. Feinstein's opinion is the most credible because it is supported by clinical studies. Dr. Feinstein reviewed x-rays, an MRI and an EMG which specifically connected the Claimant's feelings of discomfort to nerve problems associated with her diabetes. We also noted that Dr. Janerich, who testified on behalf of the Claimant, released her to return to employment on August 6, 1990.

6. Although we are very sympathetic to this Claimant, the preponderance of medical evidence shows that the problems she experienced following her return to work were related to her diabetes and not to her employment.

(WCJ's August 1, 1995 Decision, p. 2).

Based on the foregoing, the WCJ, by order dated August 1, 1995, again dismissed Claimant's petition to set aside final receipt. Claimant appealed to the Board, which, by order dated November 26, 1996 affirmed the WCJ's decision.

 On appeal here,[1] Claimant argues that the Board erred in affirming the WCJ's dismissal of her petition to set aside final receipt because Dr. Feinstein's testimony was equivocal. Claimant also maintains that there was not substantial evidence to support the WCJ's finding the Dr. Feinstein was credible based upon the diagnostic tests he used, and based upon the fact that he testified regarding an area of medicine in which he was not an expert. Finally, Claimant asserts that the WCJ erroneously applied the incorrect burden of proof. We disagree and affirm the Board's decision.

 Initially, we note that pursuant to Section 434 of the Workers' Compensation Act,[2] a final receipt is prima facia evidence of a termination of the employer's liability to pay compensation. However, a referee may set aside a final receipt if a claimant can prove by sufficient, credible, competent evidence that all disabilities attributable to the work injury in fact had not terminated at the time that she signed the final receipt. *Mellor v. Workmen's Compensation Appeal Board (Wilson Tires, Inc.),* 102 Pa.Cmwlth. 504, 518 A.2d 1308 (1986), *petition for allowance of appeal denied,* 519 Pa. 657, 546 A.2d 60 (1988). Where, as here, a claimant has resumed work with no loss of earning power and no obvious residual disability, the claimant must present unequivocal medical testimony to establish a continuing disability to set aside a final receipt. *Id.*

 In support of her burden, Claimant presented the medical testimony of Dr. Albert Janerich and Dr. Lauren Argenio. Both of these experts opined that Claimant continued to suffer from some residual disability related to her work injury when she returned to work. Employer, in opposition to Claimant's petition, presented the medical testimony of Dr. Peter Feinstein. Dr. Feinstein testified that in his opinion Claimant had recovered from any and all work related disability at the time she signed the final receipt. Dr. Feinstein further testified that

---

1. Our scope of review is limited to a determination of whether there has been a violation of constitutional rights, errors of law were committed, or whether necessary findings of fact are supported by substantial evidence. *Nevin Truck-*

*ing v. Workmen's Compensation Appeal Board (Murdock),* 667 A.2d 262 (Pa.Cmwlth.1995).

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1001.

any residual discomfort Claimant had following her return to work was not due to her work injury, but was related to an underlying diabetic condition she had. Dr. Feinstein's testimony in this regard was unequivocal. He testified as follows:

Q. Okay, excuse me. Doctor, going back to the last time you saw her prior to December 30th and that would have been August 6th, did you have an opinion with regard to whether she had recovered from her injuries of April 17th?

A. I indicated at that point that she could return to work in about two weeks and I felt that overall her examination did not correlate with her subjective complaints. So, I—although not stating it—I would have to say that she—although I didn't state it in the letter, *I felt that she had recovered from her work related injuries.*

Q. I see. Doctor, based upon your examinations of her, the diagnostic tests that you have reviewed and any medical reports or records that you had reviewed, did you within a reasonable degree of medical certainty reach a diagnosis with regard to her as of your examination of August 6, 1990?

A. Yes.

Q. And what was that diagnosis?

A. I felt once again at best she might have a sprain or strain or myofascial type of problem in her neck area. That was certainly giving her the benefit of the doubt—not by any objective testing.

Q. *Had she recovered from that injury as of that examination?*

A. *I believe that she did.*

Q. And doctor, you indicated before that she had a problem, a neuropathy resulting from her diabetes. Did you reach that diagnosis?

A. Yes.

Q. Was that related to her work?

A. No, it was not.

(Dr. Feinstein's Deposition, pp. 16–17).

The WCJ, in finding of fact 5 of his August 1, 1995 decision, noted above, specifically found Dr. Feinstein to be credible. Claimant, however, maintains that the WCJ erred in finding Dr. Feinstein credible since the WCJ premised this finding upon the fact that Dr. Feinstein relied on clinical studies in reaching his conclusion that any residual disability suffered by Claimant was caused by her underlying diabetic condition. Claimant asserts that because Dr. Feinstein testified that he did not review the diagnostic tests which lead to his reaching this conclusion until three months after Claimant signed the final receipt, the WCJ's credibility determination regarding Dr. Feinstein is in error.[3]

■ Initially, we note that the WCJ in a Workers' Compensation proceeding is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Casuccio v. Workmen's Compensation Appeal Board (Scheidemantle),* 72 Pa. Cmwlth. 270, 456 A.2d 1117 (1983).

Although Dr. Feinstein did, upon subsequent review of certain diagnostic tests, conclude that any residual disability suffered by Claimant when she returned to work was a result of her diabetes, he unequivocally testified that as of his examination of Claimant on August 6, 1990, *one month before Claimant signed the final receipt,* she was completely recovered from her work-related injuries. Dr. Feinstein also indicated that as of his August 6, 1990 exam, Claimant's symptoms related to her diabetic condition were "basically benign." (Dr. Feinstein's Deposition, p. 20).

■ In addition to the foregoing, Claimant argues that the WJC erred in relying on any testimony Dr. Feinstein gave relating Claimant's residual disabilities to her diabetes because Dr. Feinstein is an orthopedic surgeon and, therefore, is not an expert in the field of medicine regarding Claimant's diabetes. However, we note that an expert medical witness in a workers' compensation proceeding is qualified to testify outside of his medical specialty, and any objection to that testimony goes to the weight of the evidence, not its competency. *Kocher v. Workmen's Com-*

3. Dr. Feinstein testified that as of his examination of Claimant in December of 1990, three months after the final receipt was signed by Claimant, he was of the opinion that Claimant was suffering residual effects from her underlying diabetic condition.

**1382**

*pensation Appeal Board (B.G. Coon Construction Co.),* 52 Pa.Cmwlth. 106, 415 A.2d 162 (1980); *Nelson v. Workmen's Compensation Appeal Board (Elliott Co.),* 106 Pa. Cmwlth. 301, 525 A.2d 1284 (1987); *Vital Signs Institute v. Workmen's Compensation Appeal Board (Burke),* 114 Pa.Cmwlth. 191, 538 A.2d 617 (1988).

Based on the foregoing, we conclude that the WCJ's findings were supported by substantial evidence, no errors of law were committed and no constitutional violations occurred. Accordingly, we affirm the Board's order.

## ORDER

AND NOW, this 6th day of August, 1997, the order of the Workers' Compensation Appeal Board dated November 26, 1996 is affirmed.