# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mohamed Mohamed, : 
           Petitioner : 
  : No. 309 C.D. 2015
      v. : 
  : Submitted: July 24, 2015
Workers' Compensation Appeal : 
Board (Lincoln Recycling), : 
           Respondent : 


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: November 16, 2015

      Mohamed Mohamed (Claimant) petitions for review of the February 6, 2015 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting Claimant benefits for a closed period and denying his requests for penalties and counsel fees. For the reasons that follow, we affirm.

      Claimant was employed by Lincoln Metal Processing Company (Employer) as a laborer. On February 10, 2012, Claimant filed a claim petition alleging that he sustained work-related injuries to his lumbar spine and chest on July 30, 2011. On February 29, 2012, Claimant filed a penalty petition alleging that Employer violated the Workers' Compensation Act (Act)[1] by failing to make prompt

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.1, 2501–2708.

payment of medical and indemnity benefits. Claimant subsequently amended the claim petition to add aggravation of pre-existing cervical spinal stenosis and aggravation of bone spurring to the description of the work injury. The petitions were assigned to a WCJ, who held multiple hearings.

Claimant speaks Arabic and was provided an interpreter at all hearings. He testified that he came to the United States in 2004 and was hired by Employer to drive a forklift. Claimant testified that, on July 30, 2011, he drove with a co-worker, William Bonecutter (Bonecutter), to a car dealership to pick up metals. Claimant stated that while he was moving a container of heavy metal on a dolly, the dolly struck him in the chest and the container of metal struck him in the side. Claimant said that he told his supervisor about the incident, but his supervisor did not take any further action. Claimant testified that he vomited blood and had blood in his urine after the incident. (Reproduced Record (R.R.) 11a-19a, 28a.)

Claimant testified that approximately one week later he told his supervisor that he was still injured and could not work. He said that his supervisor had Bonecutter take him to Priority Care for medical attention. Claimant added that he still had blood in his urine when he went to Priority Care. Claimant testified that the doctor at Priority Care restricted him to light-duty work and gave him muscle relaxers. Claimant stated that Employer did not have light-duty work available and he kept working his regular-duty job. (R.R. at 14a-16a.)

Priority Care subsequently referred Claimant to Todd S. McCloy, D.C., who began treating him on November 9, 2011. Claimant said that Dr. McCloy prescribed muscle relaxers, provided treatment, and instructed Claimant to do exercises. Claimant stated that Dr. McCloy restricted him from working as of March 13, 2012, and he has not worked since that date. Claimant added that Dr. McCloy

and a Dr. Roger Esper, Claimant's family doctor, also prescribed a cane for him to use. (R.R. at 17a-23a, 32a-33a.)

Claimant testified that Dr. McCloy referred Claimant to Oluchi Ozumba, M.D., a pain specialist at St. Vincent Hospital. Claimant stated that Dr. Ozumba prescribed medications, took an MRI, and treated Claimant with injections that have not helped alleviate his pain. (R.R. at 32a.) Claimant further testified that Dr. McClain, his physical therapist, has restricted him from working because of his back injury. (R.R. at 76a.)

Claimant stated that he has pain in both legs as well as constant pain in his lower back. (R.R. at 31a.) He said that his pain increases when he stands for any period of time or walks any distance. (R.R. at 32a.) Claimant said that he does not believe that he can go back to work for Employer, as it is difficult for him to walk or take a shower. (R.R. at 100a.) Claimant also testified that Dr. Ozumba and a Dr. Khoja recommended that he have surgery to relieve his pain. (R.R. at 99a.)

Bonecutter was subpoenaed to be present at the July 12, 2012 hearing. He testified that he had worked for Employer for nineteen months, and he remembered two incidents that he believed occurred prior to July 30, 2011. Bonecutter stated that the first incident occurred at a car dealership when Claimant lost control of a barrel, and he remembered Claimant wincing in pain and reaching around to his back. Bonecutter testified that a second incident occurred at another car dealership where a barrel came off a handcart, causing Claimant to sustain a "pretty good strain." He said that Claimant "winced in some pain and took a little bit of a break and then continued to work." Bonecutter added that both of these incidents occurred sometime in July and involved moving barrels full of brake rotors. He

3

stated that, sometime after these incidents, Claimant stopped doing the heavy barrel work. (R.R. at 49a-53a.)

Dr. McCloy testified that he began treating Claimant in November of 2011 and continues to see him once a week. He stated that his examination of Claimant was consistent with a musculoskeletal sprain/strain injury. Dr. McCloy acknowledged that an MRI from September 2011 was read as normal, but he stated that a closed MRI taken in February 2010 provided a more detailed picture and revealed minimal Grade 1 anterolisthesis and a bulging disc at L5-S1, some degenerative changes, and foraminal stenosis. Dr. McCloy believed that Claimant's work injury aggravated his pre-existing degenerative condition, caused Claimant to suffer sprains to his middle and lower back, and likely resulted in a bulging disc. Dr. McCloy further opined that Claimant is not capable of performing any type of work. (R.R. at 113a-19a.)

Dr. Ozumba, who is board certified in anesthesiology and pain management, testified that she first saw Claimant on February 2, 2012. Dr. Ozumba diagnosed Claimant with lumbar radiculopathy and back pain. She said that Claimant's presentation was consistent with his description of the work injury and she believed that his symptoms were causally related to the work injury. Dr. Ozumba would limit Claimant to light-duty work. (R.R. at 180a-82a, 201a-03a.)

Claimant also offered the testimony of Daniel V. Loesch, M.D., a board certified neurosurgeon. Dr. Loesch testified that Claimant first saw another physician in his practice, Dr. Khoja, in June 2012, complaining of neck and low back pain. Dr. Loesch stated that in July 2012, Claimant was still complaining of back and leg pain, and an MRI showed a disc bulge at C3-4, which created a mild stenosis. Dr. Loesch

4

stated that Dr. Khoja recommended surgery for Claimant's lower back in the nature of a L5-S1 fusion with an L4-5 decompression. (R.R. at 397a-403a.)

Dr. Loesch testified that he saw Claimant in February and April 2013, and he reviewed Claimant's medical records and ordered additional tests. Based on the absence of any prior problems with Claimant's lower back, Dr. Loesch concluded that Claimant suffered injuries to his neck and lower back as a result of the July 30, 2011 work incident, and he opined that Claimant was not able to return to work as a laborer. Dr. Loesch stated that Claimant had not improved after two years of conservative management and that he would recommend surgery as a reasonable treatment option. (R.R. at 406a-11a.)

Employer presented the deposition testimony of Thomas D. Kramer, M.D., which was taken on February 6, 2013, and June 12, 2013. Dr. Kramer, a board certified orthopedic surgeon, testified that he performed an independent medical examination (IME) of Claimant on August 14, 2012, and reviewed Claimant's medical records, including x-rays and MRI studies. Dr. Kramer noted that medical records from different providers included different accounts concerning the mechanism of the work injury and different descriptions of Claimant's specific complaints. Dr. Kramer stated that on the date of his evaluation, Claimant was using a walker and complaining of lower back pain radiating down the back of both legs. He testified that his examination of Claimant revealed no evidence of spasm or swelling, and hyperextension and rotation maneuvers did not elicit any pain. (R.R. at 295a-311a.)

Dr. Kramer stated that he performed a full neurologic examination of Claimant's lower extremities and found no evidence of atrophy or asymmetric swelling to suggest disuse of muscle weakness. He noted that Claimant "was able to

5

demonstrate three over five motor strength involving bilateral lower extremities, which would not be compatible with walking." (R.R. at 301a.) Dr. Kramer stated that, since he had seen Claimant walk into the room, those responses represented a submaximal effort. (*Id.*)

During his testimony on June 12, 2013, Dr. Kramer stated that he had reviewed additional medical records, including an August 13, 2012 CT scan of the lumbar spine, a July 17, 2012 MRI study of the cervical spine, and EMG/nerve conduction studies, and that the results of those tests were normal. When asked to state his conclusions in layman's terms, Dr. Kramer responded that "there is nothing in [Claimant's] back that is causing any compression of his nerve roots . . . [and] there's no indication of a radiculopathy . . . ." (R.R. at 347a.) Dr. Kramer added that the report of the CT myelogram study showed minimal bulging with no evidence of any root compression or canal stenosis. He stated that the findings were not consistent with an acute injury that would have occurred on July 30, 2011. Instead, he testified, the findings were indicative of a chronic degenerative condition that would have preceded the work injury. On cross-examination, Dr. Kramer stated that, based upon Claimant's subjective complaints and his history, Claimant had sustained a lumbar strain. (R.R. at 346a-49a, 365a.)

Dr. Kramer said that he recommended additional testing for Claimant to be evaluated for non-musculoskeletal-related problems, such as a prostate abnormality, bladder abnormality, or kidney problem. He explained that Claimant had blood in his urine after the work injury and that a urinalysis Claimant underwent prior to the work injury was consistent with hematuria (blood in the urine) as well. Dr. Kramer stated that pain in the kidneys, bladder, or prostate can cause lower back

6

pain or flank pain and that the mechanism of the work injury was not consistent with blood in the urine. (R.R. at 351a-54a.)

Summing up his August 2012 IME findings and conclusions, Dr. Kramer testified that Claimant alleged he had a lower back injury as a consequence of the work event in July 2011 but that the emergency room record does not reveal any indication of a lower back injury or lower back complaints. Dr. Kramer stated that, as of the date of his examination, Claimant had fully recovered from any injury that he may have suffered. He added that the additional records he reviewed, including Dr. Loesch's report, support his opinion that the alleged work injury did not result in a disc herniation. Dr. Kramer clarified that he could not offer an opinion as to whether Claimant was disabled before the date of August 14, 2012 IME. He confirmed that as of that date, it was his opinion that Claimant had fully recovered from any type of alleged lumbar strain that occurred on July 30, 2011. (R.R. at 363a-64a, 376a-77a.)

The WCJ accepted the testimony of Claimant and Bonecutter to find that Claimant suffered a work-related injury on July 30, 2011. The WCJ relied on Dr. Kramer's testimony to find that the nature of the work injury was lower back and chest contusions from which Claimant had fully recovered as of August 14, 2012. Based on her credibility determinations, the WCJ awarded temporary total disability benefits for a closed period from March 13, 2012, the day Claimant last worked, through August 14, 2012. The WCJ denied Claimant's penalty petition, noting that Employer's insurer had issued a denial in a timely fashion and concluding that Claimant did not establish any violation of the Act. The WCJ also concluded that Employer's contest of issues involving the nature and extent of disability was reasonable, and she did not award attorney fees for unreasonable contest.

7

Claimant appealed to the Board, which affirmed the WCJ's decision. The Board concluded that the credited testimony supported the WCJ's findings and that the WCJ did not err in denying Claimant reasonable contest attorney fees or penalties.

On appeal to this Court,[2] Claimant first argues that the WCJ erred in concluding that he had fully recovered from the work injury. In making this argument, however, Claimant relies on the testimony of Drs. Loesch, Ozumba, and McCloy, rather than the testimony of Dr. Kramer, which was the only expert testimony that was credited by the WCJ. We note that the WCJ's complete authority over questions of witness credibility and evidentiary weight is a fundamental tenet of workers' compensation law. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). Thus, whether the record contains evidence to support findings other than those made by the WCJ is irrelevant. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Claimant also argues that "a close reading of Dr. Kramer's testimony," taken as a whole, does not support a termination of benefits. (Claimant's brief at 13.) However, contrary to Claimant's assertions, Dr. Kramer unequivocally testified that, as of the date of his examination, Claimant had fully recovered from any injury that

---

[2] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

he may have suffered, (R.R. at 365a), and our review of the record reveals that Dr. Kramer never wavered from this opinion.

Claimant also argues that the WCJ erred in failing to assess penalties, regardless of whether Employer issued a timely denial of the claim. Section 435 of the Act[3] provides that a WCJ may award penalties where there has been a violation of the Act. Claimant asserts that Employer violated its duty under section 406.1 of the Act,[4] which requires an employer to promptly commence payment of compensation after it has notice or knowledge of the employee's disability. In making this argument, Claimant contends that Dr. Kramer's expert medical report as well as his testimony never disputed that an injury took place or that Claimant was disabled as a result of a work injury prior to the IME. However, Claimant either misstates or misapprehends Dr. Kramer's testimony and opinions. As noted by the Board, Dr. Kramer did not testify that Claimant suffered a work injury or any period of disability. Rather, his testimony was that Claimant's subjective complaints and history would support a diagnosis of a lumbar strain and that, if Claimant had sustained a work injury, he had fully recovered from it as of the date of the IME. Accordingly, the record does not establish a violation of the Act, and the WCJ did not err in denying Claimant's penalty petition.

Finally, Claimant argues that the WCJ erred in determining that Employer had a reasonable basis to contest the claim. Under section 440 of the Act,[5] a claimant who prevails in any contested case is entitled to an award of attorney fees

---

[3] Added by the Act of February 8, 1972, P.L. 25, 77 P.S. §991.

[4] Added by the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1.

[5] Added by the Act of February 8, 1972, P.L. 25, 77 P.S. §996.

9

unless the record supports the conclusion that the employer had a reasonable basis for contesting liability. *Steeple v. Workers' Compensation Appeal Board (PA Liquor Control Board)*, 796 A.2d 394, 397 (Pa. Cmwlth. 2002). A reasonable contest is established where the medical evidence is conflicting or susceptible to contrary inferences and where there is an absence of evidence that the employer's contest was frivolous or filed for purposes of harassment. *Mason v. Workmen's Compensation Appeal Board (Wheeling-Pittsburgh Steel Corp.)*, 600 A.2d 241, 244 (Pa. Cmwlth. 1991). Bona fide issues concerning the nature and the extent of disability will render a contest reasonable. *Striker v. Workers' Compensation Appeal Board (California University of PA)*, 650 A.2d 1109, 1111 (Pa. Cmwlth. 1994); *Dwokek v. Workers' Compensation Appeal Board (Ragnar Benson)*, 646 A.2d 713, 716 (Pa. Cmwlth. 1994).

Additionally, counsel fees will not be assessed against an employer for unreasonable contest where an employer has a factual basis to contest liability at the time it issues a notice of denial. *Hansen v. Workers' Compensation Appeal Board (Stout Road Associates)*, 957 A.2d 372, 375-76 (Pa. Cmwlth. 2008). Here, the record reflects that at the time Employer filed its answer, Claimant was still working at his pre-injury job with no loss of wages. Claimant maintains that Employer was provided "clear and convincing evidence from both [Claimant's] and [Employer's] experts" establishing that Claimant suffered a compensable injury. (Claimant's brief at 19.) As previously noted, however, Claimant's assessment of Dr. Kramer's opinions is not supported by the record. Instead, Dr. Kramer's opinions, credited by the WCJ, provided Employer with an additional reasonable basis to contest the extent of Claimant's alleged injuries and disability. *Striker*, 650 A.2d at 1111.

10

Accordingly, having concluded that the WCJ's decision is supported by substantial evidence and discerning no error or law, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mohamed Mohamed,                 :
            Petitioner     :
                      :  No. 309 C.D. 2015
         v.            :
                      :
Workers' Compensation Appeal  :
Board (Lincoln Recycling),     :
            Respondent  :

## *ORDER*

AND NOW, this 16th day of November, 2015, the order of the Workers' Compensation Appeal Board, dated February 6, 2015, is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge