IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Kelly,                          :
                    Petitioner         :
                                       :
        v.                             :  No. 237 C.D. 2020
                                       :  SUBMITTED: December 11, 2020
Workers' Compensation Appeal           :
Board (Lentz Kitchen and Bath          :
Contracting),                          :
                    Respondent         :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: February 3, 2021

        Robert Kelly (Claimant) petitions this Court for review of the December 18,
2019 order of the Workers' Compensation Appeal Board (Board), which affirmed
the decision of a workers' compensation judge (WCJ) granting Claimant benefits
under the Workers' Compensation Act (Act)[2] for a closed period. The issue on
appeal is whether the WCJ's credibility determinations were inconsistent. After
review, we affirm.

## I.    Background

        Claimant filed a claim petition on October 23, 2016, seeking total disability
workers' compensation benefits for an alleged back injury he sustained on August
16, 2016, while working as an installer for Lentz Kitchen and Bath Contracting

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt
completed her term as President Judge.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

(Employer).  Certified Record (C.R.), Item No. 2.  Employer denied the allegations. *Id.*, Item No. 4.  Several hearings were held before the WCJ, during which the parties presented live and deposition testimony and documentary evidence.

## A. Claimant's Evidence

Claimant testified that his back was injured on August 16, 2017, at approximately 3:30 p.m., while carrying a granite countertop weighing 250 pounds.  C.R., Item No. 14, Notes of Testimony (N.T.), 1/4/17, at 11.  Claimant experienced pain in his lower left back a few hours later, around 6:00 p.m., which increased throughout the evening.  *Id.* at 12-13.  By 11:00p.m., Claimant felt "pain down [his] leg," which extended to his left foot.  *Id.* at 13.  Claimant reported his symptoms to his supervisor, Scott Stancombe, the next morning.  *Id.* at 13-14.  He finished his shift that day but called off work the next two days and sought treatment with Scott Cook, a chiropractor who treated Claimant for work injuries in 2005 and 2009 that involved his right lower back and right leg.  *Id.* at 15-17, 32.  Prior to seeking treatment for the August 16, 2016 work injury, Claimant had not seen Dr. Cook since 2011.  *Id.* at 17.

When he returned to work the following Monday, Claimant told Stancombe that he had work restrictions, which included no lifting over 20 pounds or working on ladders, but Employer made "no real accommodations."  *Id.* at 18-20.  Claimant worked another three weeks but notified Stancombe he could not continue working without accommodations.  *Id.* at 19.  Employer let Claimant go on September 14, 2016, and Claimant filed for unemployment compensation benefits.  *Id.* at 20.

Claimant testified that he did not feel capable of returning to his job as an installer, as he continued to experience pain in his left leg, which radiated down to

his ankle, and he still had work restrictions with respect to lifting heavier weight and working on ladders. *Id.* at 21-23.

Claimant reviewed a surveillance report presented by Employer, which documented Claimant, post-injury, working on the exterior of his house and carrying his grandson. *Id.* at 22-23. He asserted that most of the work was performed by his sons, and he did not lift anything exceeding the weight restrictions imposed by Dr. Cook. *Id.* at 31-32. Claimant related that his August 16, 2016 symptoms were similar to those in 2009, with a gradual onset of pain. *Id.* at 16.

As of the February 13, 2018 WCJ hearing, Claimant remained out of work. C.R., Item No. 19, N.T., 2/13/18, at 11. He continued to receive physical therapy with Dr. Cook. *Id.* at 10. Claimant also treated with Michael Rutigliano, M.D., who recommended that Claimant continue with physical therapy. *Id.* at 11. Claimant's symptoms had eased somewhat, but the "issues in [his] ankle and the foot" remained. *Id.* at 13. During cross-examination, Claimant agreed Dr. Rutigliano had not placed restrictions on his ability to work. *Id.* at 12.

Dr. Cook testified at a September 21, 2017 deposition that he treated Claimant previously in 2005-06 and in 2010-11 for work-related injuries to his right lumbar spine. C.R., Item No. 22, Cook Deposition, 9/21/17, at 10-12, 14. By May 2011, Dr. Cook released Claimant to full-duty work, as his 2010 work injury had resolved. *Id.* at 15. Dr. Cook did not treat Claimant again until after he sustained the August 16, 2016 work injury. *Id.* Claimant presented at that time with left-sided neuropathy, which led Dr. Cook to suspect a herniated disc on the left side of Claimant's lumbar spine. *Id.* at 17. A September 30, 2016 magnetic resonance imaging study (MRI), which evidenced subluxations at the L2, L4, and L5 levels, confirmed Dr. Cook's suspicions. *Id.* Dr. Cook related that the subluxations were

3

not present in any of Claimant's previous MRI studies. *Id.* He attributed Claimant's condition to the August 16, 2016 work injury, as Claimant had been symptom-free prior to that date, and Claimant's previous lower back and leg issues were limited to his right side. *Id.* at 24.

While Dr. Cook acknowledged that he never took Claimant out of work due to the work injury, he placed Claimant on work restrictions, which prohibited him from lifting over 20 pounds, and directed that he refrain from squatting, climbing, or crawling. *Id.* at 23, 47. Although Dr. Cook conceded on cross-examination that Claimant's condition had improved, he maintained the need for the restrictions, as Claimant still experienced left-sided numbness. *Id.* at 48. Dr. Cook advised that Claimant does not take pain medication because it exacerbates ulcers in his stomach. *Id.* at 53.

Dr. Cook reviewed a report prepared by D. Kelly Agnew, M.D., an orthopedic surgeon who performed an independent medical exam (IME) of Claimant. *Id.* at 58. He disagreed with Dr. Agnew's conclusion that Claimant's symptoms were unrelated to the August 16, 2016 work injury. *Id.* at 59.

### B. Employer's Evidence

Employer presented the deposition testimony of Dr. Agnew, who examined Claimant on March 1, 2017, and reviewed Claimant's medical records, as well as Dr. Cook's testimony. C.R., Item No. 29, Agnew Deposition, 1/17/18, at 7-8. Claimant recounted the incident and his present symptoms to Dr. Agnew, but also stated that the pain in his leg had resolved and his back pain was approximately 80% resolved. *Id.* at 9-10. Dr. Agnew observed that, during the IME, Claimant moved with a steady gait and sat without apparent discomfort. *Id.* at 15. Claimant exhibited no tenderness or spasm in the lumbosacral region. *Id.* Measurements of Claimant's

right and left calves and thighs were equal, indicating that no atrophy had occurred in Claimant's left leg due to limping or disuse. *Id.* at 16.

Dr. Agnew reviewed surveillance footage of Claimant in November 2016. *Id.* at 17. Beyond a slight limp observed in the November 22, 2016 footage, Dr. Agnew saw nothing that suggested Claimant suffered from back pain or any limitation of motion. *Id.* at 18.

Dr. Agnew opined that any documented changes to Claimant's left lumbar spine were not related to any trauma but were instead degenerative in nature. *Id.* at 13. While Dr. Agnew admitted that lifting a heavy countertop had the potential to cause an injury, he would have expected such an injury to manifest symptoms immediately. *Id.* at 21-22. Furthermore, Dr. Agnew found no structural changes in Claimant's MRIs that would indicate an injury. *Id.* at 43. When taking these factors into account, along with Claimant's ability to continue working on August 16, 2016, and his motion and activities documented in the surveillance footage, Dr. Agnew opined there was no evidence to suggest Claimant suffered a work injury as a result of the August 16, 2016 work activities. *Id.* at 23. Dr. Agnew likewise found no evidence to suggest the preexisting degenerative condition of Claimant's lower back was aggravated by his August 16, 2016 work activities. *Id.* at 29. Additionally, Dr. Agnew disagreed with Dr. Cook's prognosis and questioned the continued restrictions when both Dr. Cook and Claimant had indicated the condition was improving. *Id.* at 30-31.

## C. WCJ Decision

The WCJ granted the claim petition in a decision circulated on July 11, 2018. C.R., Item No. 8 at 12. Having observed Claimant's live testimony, the WCJ found credible his testimony regarding the circumstances of the August 16, 2016 work

injury, in part because it was consistent with the mechanism of injury reported by Claimant to Drs. Cook and Agnew. *Id.*, Finding of Fact (F.F.) No. 20. The WCJ noted that Claimant's testimony in this regard was uncontradicted, as Employer presented no contrary lay witness testimony. *Id.* The WCJ further credited Claimant's testimony regarding the delayed onset of pain related to the work injury. F.F. No. 21. The WCJ recognized that Claimant had a preexisting degenerative condition in his lower back, and he found that the August 16, 2016 work injury aggravated that condition. F.F. No. 22.

The WCJ credited Dr. Cook's testimony that the work injury caused Claimant's lower left back complaints, as there was no evidence Claimant sought treatment for low back pain after he stopped treating with Dr. Cook in 2011, and Dr. Agnew provided no other explanation for Claimant's lower left back pain. F.F. No. 22(a). Dr. Agnew's stance that any aggravation of Claimant's preexisting condition required an underlying structural change was deemed not credible and too formalistic and rigid, as it ignored the possibility that a condition could still be symptomatic in the absence of structural changes. F.F. No. 22(d). The WCJ also discredited Dr. Agnew's opinion that the work injury sustained required an immediate onset of pain. F.F. No. 22(e).

With regard to the November 2016 surveillance footage, the WCJ agreed that Claimant performed various activities with little or no distress; however, he did not appear to lift anything in excess of the 20-pound limit imposed by Dr. Cook. F.F. 23(e). Any continuation of these work restrictions was not justified, however, given Claimant's admission to Dr. Agnew that his condition had improved as of March 1, 2017. F.F. Nos. 23(c), (f). The WCJ credited Dr. Agnew's testimony to the extent he found no evidence of structural changes in Claimant's degenerative lower back

condition or any disability related to the work injury during the March 1, 2017 IME. F.F. No. 23(g). The WCJ discredited Dr. Cook's testimony regarding Claimant's continued disability, as it disregarded the improvements in Claimant's condition. F.F. No. 23(h).

The WCJ concluded that Claimant carried his burden for his benefits claim, but Claimant failed to prove he suffered from a continuing disability as of the March 1, 2017 examination by Dr. Agnew. Conclusion of Law (COL) No. 4. Thus, the WCJ ordered benefits for the closed period of August 16, 2016 to February 28, 2017. *Id.*

Claimant appealed this decision to the Board, arguing that the WCJ erred because he inconsistently found Dr. Agnew credible that there were no structural changes in Claimant's degenerative back condition but found Dr. Agnew not credible with respect to causation. C.R., Item No. 9. In affirming the WCJ, the Board noted that a "WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight, and may accept or reject the testimony of any witness, in whole or in part." *Id.*, Item No. 11, at 6 (citing *Lombardo v. Workers' Comp. Appeal Bd. (Topps Co., Inc.)*, 698 A.2d 1378 (Pa. Cmwlth. 1997)). The Board determined that the WCJ's credibility findings were not necessarily mutually exclusive or contradictory, and the WCJ did not err in "accepting Dr. Cook's testimony over that of Dr. Agnew, in part, and also accepting Dr. Agnew's testimony over Dr. Cook's testimony, in part, to arrive at his conclusions in the present matter." *Id.* at 6-7. This appeal followed.

## II.    Issues

On appeal,[3] Claimant asserts that the WCJ's credibility determinations are inconsistent.  Specifically, the WCJ could not find Dr. Cook credible as to the occurrence of the injury on August 16, 2016, but not credible to the extent that Claimant had not recovered from the injury, and, vice versa, Dr. Agnew not credible as to the occurrence of the injury, but credible as to Claimant's recovery by March 1, 2017.  Claimant argues that he could not have his benefits terminated in his claim petition, because Employer never filed a petition to terminate.  Claimant's Br. at 11.  Additionally, Claimant argues that because Dr. Agnew testified that the injury did not occur, he could not be credible that Claimant had recovered.[4]  Claimant's Br. at 11.  Employer counters that a WCJ may "award a claim and terminate benefits in the same adjudication."  Employer's Br. at 14.  Furthermore, Employer asserts that the WCJ's credibility findings cannot be disturbed on appeal.  Employer's Br. at 15.

## III.    Analysis

"The burden of proof in a claim petition rests on the claimant to demonstrate not only that he has sustained a compensable injury **but also that the injury continues to cause disability throughout the pendency of the claim petition.**" *Innovative Spaces v. Workmen's Comp. Appeal Bd. (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994) (citing *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*,

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Zuchelli v. Workers' Comp. Appeal Bd. (Ind. Univ. of Pa.)*, 35 A.3d 801, 804 n.2 (Pa. Cmwlth. 2011).

[4] In support of this argument, Claimant attached various exhibits to his brief. Some of the exhibits are not present in the record as are discounted. *See* Pa. R.A.P. 1951; *see also Commonwealth v. Young*, 317 A.2d 258, 264 (Pa. 1974) (holding an appellate court may consider only the facts which have been duly certified in the record on appeal).

8

634 A.2d 592, 595 (Pa. 1993)) (emphasis added). Furthermore, it is not inconsistent for the WCJ to find the experts credible as to one issue, but not credible as to another. *See*, *e.g.*, *Watson v. Workers' Comp. Appeal Bd. (Special People in Ne.)*, 949 A.2d 949, 954 (Pa. Cmwlth. 2008) (finding the claimant's expert credible as to the injury, but the employer's expert credible that there was no continuing disability). Ultimately, it is within the WCJ's exclusive role as factfinder to determine the weight and credibility of evidence and "to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Lombardo*, 698 A.2d at 1381.

Contrary to Claimant's assertions, the WCJ did not terminate benefits, but rather only granted benefits for a closed period between August 16, 2016 and February 28, 2017. Claimant established that he suffered a compensable injury but failed to show he continued to suffer a disability from the injury as of February 28, 2017. C.R. Item No. 8, WCJ Decision COL No. 4. In this case, Employer did not need to file a petition to terminate because Claimant failed to carry his burden demonstrating that he continued to suffer a disability as of March 1, 2017. *Watson*, 949 A.2d at 953-54. Showing a continuing disability is a necessary element to receive continuing benefits, which Claimant failed to prove. *Innovative Spaces*, 646 A.2d at 54. Therefore, the WCJ was permitted to grant benefits only for the closed period.

We similarly reject Claimant's argument that the WCJ's credibility determinations were inconsistent, as those determinations concerned separate issues. *Watson*, 949 A.2d at 954; *Lombardo*, 698 A.2d at 1381. The WCJ found Dr. Cook credible regarding whether Claimant suffered a compensable injury. The testimony of Dr. Agnew that the WCJ deemed credible did not relate to the existence of

Claimant's work injury, but rather to the duration of that injury. Importantly, the WCJ found the work injury to be an aggravation of Claimant's preexisting lower back condition to the point it became symptomatic. F.F. No. 22. The WCJ took issue with Dr. Agnew's "rigid stance that in order for there to be an aggravation [] there must be a change in the underlying bodily structure." F.F. No. 22(d). However, the WCJ credited Dr. Agnew's testimony that he found no evidence of an injury in Claimant's MRIs and, in light of Claimant's admission that his condition had improved by 80%, the WCJ found that Claimant had recovered from his work injury by March 1, 2017. *Id.* at 45. These findings are not inconsistent. They merely relate to different elements that a claimant must prove to establish a right to workers' compensation benefits: (1) whether the disability was caused by a work-related injury, and (2) whether claimant's continued disability is related to that injury. *Innovative Spaces*, 646 A.2d at 54. These credibility determinations on separate elements were within the WCJ's role as factfinder; therefore, the WCJ was permitted to find a compensable injury and find a recovery from that injury.

## IV. Conclusion

The WCJ found Claimant suffered a workplace injury on August 16, 2016. The WCJ also found that Claimant had recovered from this injury by March 1, 2017. These findings are not inconsistent. Accordingly, the Board did not err in affirming the WCJ's decision granting Claimant's claim petition for the closed period beginning August 16, 2016 and ending February 28, 2017. We therefore affirm the Board's December 18, 2019 Order.

_____
ELLEN CEISLER, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Kelly,                          :
              Petitioner             :
                                   :
         v.                           :   No. 237 C.D. 2020
                                   :
Workers' Compensation Appeal     :
Board (Lentz Kitchen and Bath     :
Contracting),                        :
             Respondent        :

# **O R D E R**

AND NOW, this 3rd day of February, 2021, the December 18, 2019 Order of the Workers' Compensation Appeal Board is hereby AFFRIMED.

_____
ELLEN CEISLER, Judge