Kenneth Parks,                              :
                    Petitioner             :
                                           :   No.  1444 C.D. 2017
                    v.                     :
                                           :   Submitted:  April 13, 2018
Workers' Compensation Appeal               :
Board (Ayers Line Construction, Inc.),     :
                    Respondent             :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED:  August 16, 2018


          Kenneth Parks (Claimant) petitions for review from the September 20, 2017 order of the Workers' Compensation Appeal Board (Board), which affirmed the order of a Workers' Compensation Judge (WCJ) granting Claimant's review petition and awarding specific loss benefits for the loss of the left thumb and first finger.  Upon review, we affirm the Board.


**Facts and Procedural History**

          Claimant was injured on November 6, 2008, while working for Ayers Line Construction, Inc. (Employer) as a lineman, when his bucket truck touched a hot wire and he sustained an electric shock, which entered through his left arm and exited through his left wrist, index finger, and thumb, as well as through his right wrist.

Employer issued a notice of compensation payable, describing Claimant's injury as electric shock to both hands and both arms. In October 2014, Claimant filed a petition to review his benefits, asserting that he had also sustained the specific loss of use of both his hands, in addition to disabilities related to his arms that were separate and apart from the other acknowledged disabilities. Employer filed an answer denying the averments in Claimant's petition and the matter was assigned to a WCJ, who held multiple hearings. (Findings of Fact (F.F.) Nos. 1-5.)

Claimant testified before the WCJ. He stated that his job as a lineman for Employer entailed rebuilding new power lines, putting in new wire, and installing new telephone poles. On the date of the injury, he stated that the bucket truck he was in touched a hot wire, causing 7,200 volts of electricity to enter his body through his left forearm, travel through his body, and exit his left wrist, left index finger, left thumb and right wrist. Claimant testified that Dr. Robert Kang performed several surgeries to address his severe burns, including amputation of his left index finger and partial amputation of his left thumb, which fused into a bent position. Claimant stated that he had skin grafts applied on both wrists from the crease of his palm down several inches into his forearm. (F.F. Nos. 4-7; Reproduced Record (R.R.) at 18a, 24a, 28a.)

With regard to his symptoms, Claimant testified that his left and right hands are numb and painful—specifically, his thumbs, right index finger, middle fingers, and half of his ring fingers. Claimant stated that both of his wrists are sensitive and that he feels pain shoot up and down his arms when they are touched. On his left hand, Claimant testified that bone was taken out between his middle finger and thumb along the back of the hand where his index finger had been. He stated that he cannot move his left wrist the way he used to previously and that he has no strength or feeling in his left hand such that he cannot use it to do anything. On his right hand, Claimant

2

stated that his fingers are numb and that he does not have the same range of motion as he did previously. Claimant further testified that he cannot tie grocery bags or shoes, pull up zippers, hold money in either hand, open a bag of chips, go fishing or hunting, clip his dogs' collars, throw a ball, or play Legos with his child. He stated that he drives with his right hand but not for long distances because his wrist gets sore and stiff and it is difficult for him to steer, since he must "palm" the wheel with his right hand and operate the turn signals with his pinky fingers. (Board's Op. at 4-5; F.F. Nos. 8-11.)

On cross-examination, Claimant acknowledged that he is right-handed and agreed that his right hand is more functional than his left. Claimant stated that he could use his right hand to brush his teeth, feed and clean himself, and sign his name. He stated that he can button his pants without assistance using both hands. With regard to driving, Claimant stated that he drives a Ford F-150 without any modifications and that no doctors have instructed him not to drive. Claimant also acknowledged that he obtained a hunting license every year since his injury, but stated that he only used it to help his friend "drive deer" by using his arms to push brush out of the way. (R.R. at 73a.) Claimant further stated that he had not shot a firearm since the date of his work injury. Claimant agreed that he has a normal range of motion in the middle, ring, and pinky fingers of both hands and that he could make a fist with his right but not left hand. Finally, Claimant testified that, since the injury, he has not done yard work, chores, or driven an ATV; however, Claimant reiterated his testimony that he could drive alone and stated that he was able to pay for gas and merchandise with a credit card. (F.F. Nos. 11-14; Board's Op. at 5-6.)

Claimant's wife, Angela Parks, also testified before the WCJ. She stated that she had known Claimant for 15 years and that, prior to his injury, he had been the

3

family's mechanic and handyman. Since the accident, Mrs. Parks stated that Claimant does not do anything around the house except watch television and kick a ball with one of their dogs. Mrs. Parks testified that Claimant cannot use his left hand for anything and that, while his right hand is more functional, he is unable to use it to open cereal boxes or twist ties. Mrs. Parks further testified that she stopped working shortly after Claimant's injury because Claimant was unable to prepare food for himself or clean up after their dogs. On cross-examination, Mrs. Parks stated that Claimant is able to change the television channel by working the remote control with his right thumb. Additionally, she testified that Claimant can open the refrigerator and get himself a snack or bottle of water, which he opens by using his right pinky finger to twist off the cap. (F.F. Nos. 15-16; Board's Op. at 6.)

In support of his petition, Claimant presented the deposition testimony of Robert H. Kang, M.D., a board-certified plastic surgeon and hand surgeon who began seeing Claimant in December 2008 and treated him on a routine basis. Dr. Kang confirmed that Claimant had undergone several surgeries, including a left index finger ray amputation at the base of the finger, which went into the palm and a partial left thumb amputation, resulting in a thumb that is essentially fused. Dr. Kang also testified about a report he authored in October 2013, and reiterated that Claimant sustained electrical injuries to both forearms and injuries to the median nerve in both forearms and wrists. He explained that the median nerve innervates many muscles controlling the forearms, wrists, and fingers, and that, as a result of his damaged median nerves, Claimant would be unable to perform his duties as a lineman. (F.F. Nos. 17-20; Board's Op. at 6-7.)

Dr. Kang testified that he reviewed and agreed with a July 2013 report authored by Jon B. Tucker, M.D., a doctor who performed an impairment rating

4

evaluation on Claimant. Specifically, Dr. Kang agreed with Dr. Tucker that Claimant's skin grafts measured 20 centimeters by 20 centimeters on the radial aspect of both forearms and that the range of motion Dr. Tucker measured on Claimant was consistent with his own observations. Dr. Kang also testified that he reviewed the records of Gregg Goldstrohm, M.D., who performed an independent medical evaluation of Claimant in October 2012, and stated that he agreed with Dr. Goldstrohm's statement: "I do not think he'll ever return most likely to the workforce." (R.R. at 115a.) Lastly, Dr. Kang testified that he disagreed with the opinion of Steven E. Kann, M.D., who evaluated Claimant in January 2015, that Claimant had full range of motion in his wrists. (F.F. No. 21; Board's Op. at 6-7.)

Dr. Kang testified regarding Claimant's loss of the use of his hands. With regard to Claimant's left hand, Dr. Kang testified to his opinion that Claimant was not able to use his left hand in the workforce because he has no feeling in those fingers within the median nerve distribution, which include the thumb, index finger, middle finger, and one half of the ring finger. Dr. Kang noted that Claimant does not have a left index finger and, thus, was left only with sensation in his pinky finger on that hand, which he did not believe was sufficient to continue in the workforce. Further, Dr. Kang stated that the surgery to Claimant's left thumb left it shortened, flexed, and stiff. He opined that, although Claimant is able to make a fist with his left hand, it is weakened and, in his opinion, cannot be used for activities of daily life. (F.F. Nos. 20, 22; Board's Op. at 7-8.)

As to Claimant's right hand, Dr. Kang testified that Claimant likewise has no sensation in the median nerve distribution and has lost appreciable grip strength, noting that Dr. Kann measured it at 35 pounds at level 2 on a Jamar grip device. Dr. Kang stated that he would expect the grip strength of Claimant's right hand to be 120

5

pounds and 80% to 90% of that in his left hand. Dr. Kang observed that Claimant is able to make a fist with his right hand but stated that it was not a "functional fist." (R.R. at 124a.) Ultimately, Dr. Kang testified that Claimant had lost the use of his right upper extremity for all intents and purposes and that he had lost the use of his right hand for all intents and purposes related to "meaningful gain." (R.R. at 125a.) Dr. Kang clarified that Claimant's ability to drive a vehicle without modifications did not change his opinion. (F.F. Nos. 23-24; Board's Op. at 8.)

Finally, Dr. Kang opined that Claimant had a disability with regard to both forearms and wrists, separate and apart from his hands because skin grafts do not "behave like normal skin in terms of protection and integrity, even though [the skin] is his." (R.R. at 135a.) Dr. Kang explained that Claimant had lost "protective sensation" in the skin grafts, which are adhered to his flexor tendons, and noted that the skin was thin and consequently cold and heat intolerant, as well as prone to a loss of integrity and injury. Dr. Kang further noted that Claimant's wrist range of motion was limited due to the skin grafting. Dr. Kang agreed that Claimant's ulnar and radial nerves were still functioning in both hands, but opined that Claimant's deficits were permanent and that Claimant had reached maximum medical improvement. Dr. Kang also acknowledged that the purpose of some of Claimant's surgeries, including the left index finger amputation, was to increase the functionality of his hand. (F.F. Nos. 21, 23; Board's Op. at 8-9.)

Employer presented the testimony of Dr. Steven Kann, a board-certified orthopedic surgeon with a subspecialty in the hand, upper extremity, and microsurgery. Dr. Kann testified that he obtained a history from Claimant, reviewed numerous medical records, and evaluated Claimant in January 2015. Dr. Kann noted that there are three nerves providing sensation to the hands and arms and that, while the median

nerves in both of Claimant's hands were not functioning, his radial and ulnar nerves remained intact. Dr. Kann explained that the ulnar nerve, which is responsible for fine motor control of the hand, provides sensation to the palmar surface of the fifth digit and to half of the ring finger. Dr. Kann also explained the radial nerve provides sensation on the top of the hand and enables one to extend one's fingers. Dr. Kann testified that, if Claimant lacked median nerve sensation, he could still grip a cup and type, although he would have to watch his fingers because he would be unable to rely on tactile sensation to guide him. Thus, Dr. Kann stated that a lack of sensation did not equate to a lack of use, noting that Claimant's ability to use a remote control with his right thumb was an example of fine manipulative activity. (F.F. Nos. 26-29; Board's Op. at 9-10.)

Based upon his evaluation, Dr. Kann stated he found Claimant had a full range of motion of all features of his right hand, as well as a well-healed skin graft, a full range of motion of the right wrist and elbow, and functional grip strength. With regard to Claimant's left hand, Dr. Kann noted the amputation of Claimant's index finger and that his thumb has stiffness and a "flexion contracture" in the end joint, meaning that it was bent and unable to be fully straightened. (R.R. at 261a.) Otherwise, Dr. Kann stated that Claimant's third, fourth, and fifth fingers, as well as his left wrist, had a normal range of motion. Dr. Kann also noted that Claimant indicated his hypersensitivity to touch at the median nerve injury site in both wrists. (F.F. Nos. 31-32; Board's Op. at 9-10.)

Dr. Kann also measured Claimant's grip strength during the evaluation using a Jamar dynamometer device and noted that Claimant achieved 35 pounds on the right and 20 pounds on the left, which Dr. Kann stated was approximately the grip strength of a 75-year-old woman. Noting that the difference in strength between

7

Claimant's hands was consistent with Claimant's right-hand dominance, Dr. Kann stated that normal findings would be between 80 and 110; however, Dr. Kann testified that Claimant's grip strength would still allow him to cook, clean, brush his teeth, drive a car, manipulate papers, and perform activities of daily living, although he would be unable to pick up or pull very heavy objects or forcefully grasp something. (F.F. No. 30; Board's Op. at 9.)

Ultimately, Dr. Kann opined that Claimant had not lost the use of either hand for all practical intents and purposes, with the exception of Claimant's left thumb and index finger. In reaching this determination, Dr. Kann cited Claimant's full range of motion of his wrists and fingers, functional grip strength, and normal nerve function in two out of three nerves. Further, Dr. Kann testified that he did not agree that Claimant suffered a disability to his arms that was separate and apart from the wrist level of his hands, explaining that he did not believe that Claimant's skin grafts created a disability in and of themselves, since they were well-healed. While Dr. Kann did agree with Dr. Kang that skin grafts tend to be less durable than native tissue, he opined that they do not create a functional impairment. (F.F. Nos. 31-32; Board's Op. at 9-10.)

On February 22, 2016, the WCJ issued his decision and order granting Claimant's review petition and awarding Claimant benefits for the loss of his left thumb and index finger. The WCJ accepted the testimony of Dr. Kann over that of Dr. Kang, finding that Dr. Kann credibly explained that, while Claimant had lost the use of his left thumb and index finger, the remainder of his left hand was functional. The WCJ also made note of Dr. Kann's testimony that there was normal functioning of the radial and ulnar nerves, which are responsible for fine motor control, and that Claimant had control of his hand and fingers, so long as he watched what he was doing to compensate

for the lack of sensation due to the bilateral median nerve injury. The WCJ explained that he was "persuaded by the testimony regarding the things the Claimant is able to do with his left pinky, including in tandem with the right pinky." (F.F. No 33.) The WCJ continued, "It makes sense that the Claimant uses his pinky fingers because they have complete sensation and do not require him to look to see what he is doing." *Id.* The WCJ stated that he was "further persuaded by the testimony of the Claimant's wife when she described the Claimant twisting the cap off a bottle of water by using his right pinky," stating that "[c]learly, the Claimant would have to secure the bottle with the remaining three fingers of his left hand to remove the cap with his right." *Id.* The WCJ also found notable Dr. Kang's acknowledgement that the purpose of the left index finger amputation was to facilitate cylindrical grasp. *Id.* Finally, the WCJ found that Dr. Kann's testimony "fairly and accurately" described Claimant's functional abilities, which did not support a finding of the complete loss of use of either hand for practical intents and purposes. *Id.*

Claimant appealed the WCJ's order. On September 20, 2017, the Board issued its decision and order affirming the decision of the WCJ. Claimant filed the present petition for review with this Court[1] raising the following four issues for our review: (1) whether the WCJ erred in relying upon an independent medical examiner, "who misstated the effect of a completely destroyed median nerve and disregarded the testimony of four physicians establishing a practical loss of use"; (2) whether Claimant's alleged loss of use of four fingers and to the body of the hand itself constitutes loss of use of the hand for all practical intents and purposes; (3) whether the

---

[1] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

WCJ erred in failing to find a disability of Claimant's hands separate and apart from the acknowledged injuries; and (4) whether the WCJ erred by failing to discuss or address five exhibits, including three medical reports purportedly establishing loss of use, photographic evidence, and video surveillance depicting loss of functional use. (Claimant's brief at 4.)

**Discussion**

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Co.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* We will not disturb the WCJ's findings on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

Moreover, where both parties present evidence, it is irrelevant that the record contains evidence that supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Additionally, on appeal, all inferences drawn from the evidence shall be taken in favor of the party prevailing before the WCJ. *Krumins Roofing and Siding v.*

*Workmen's Compensation Appeal Board (Libby)*, 575 A.2d 656, 659 (Pa. Cmwlth. 1990).

With regard to his first argument, Claimant asserts the WCJ erred in finding that Claimant had not lost complete use of both hands for all practical intents and purposes and, more specifically, erred by relying on Dr. Kann's testimony in reaching that determination. Claimant devotes much of his brief to reciting portions of his own testimony, as well as the medical opinions of Dr. Kang, which he asserts establish facts that the WCJ should have found, including that Claimant lost all median nerve motor and sensory function. Claimant makes these arguments despite the fact that the WCJ specifically found Dr. Kann more credible than Dr. Kang. As this Court has repeatedly held, a "WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part," *Lombardo*, 698 A.2d at 1381, and "[u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Compensation Appeal Board (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). As discussed more fully below, we cannot agree that the WCJ acted arbitrarily or capriciously in finding Dr. Kann's testimony credible.

Claimant likewise emphasizes the opinion of Dr. Tucker in his July 18, 2013 report, which stated, *inter alia*, that Claimant had no useful sensation or motor function in either hand; however, Claimant did not introduce testimony from Dr. Tucker, and Dr. Tucker's report was only referenced insofar as Dr. Kann and Dr. Kang were asked to express their opinions on it, the former of whom disagreed with its findings. As such, Claimant is simply directing the Court to hearsay evidence in the record with which the more credible medical witness disagreed.

11

The same can be said for Claimant's argument that, "in contrast to Dr. Kann," other doctors made findings more favorable to Claimant, including Elizabeth Dunmore, M.D., who wrote a social security disability report on Claimant stating that he had no use of his left hand and partial use of his right, and Dr. Goldstrohm, who authored an independent medical evaluation report stating that Claimant's loss of sensation limits his ability to do "many things." (Claimant's brief at 17.) The fact that there is contrary medical evidence in the record simply does not equate to there being a lack of substantial evidence supporting the WCJ's findings. *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1024 (Pa. Cmwlth. 2000) ("[I]t does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence." (internal citations omitted)).

Claimant also asserts, inaccurately, that Dr. Kann based his opinion solely on the Jamar grip strength test, emphasizing that Dr. Kann "did not view the video surveillance of [Claimant]'s activities[,] did not ascertain [Claimant]'s level of use of his hands during the exam[,] did not try to observe [Claimant] dress [or] undress, did not ask [Claimant] to handle money, comb his hair, pull up his pants, observe if [Claimant] was wearing laces on his shoes, wore a button down shirt, or ascertain who completed the paper work [sic] for the exam." (Claimant's brief at 19.) Nonetheless, even if Claimant's allegations were true, Claimant is simply expressing disagreement with the evidentiary weight and persuasive value the WCJ assigned to Dr. Kann's testimony, and it is well-settled that it is solely for the factfinder, and not this Court, to make such determinations. *Hoffmaster*, 721 A.2d at 1156. Furthermore, Dr. Kann

12

explained that he came to the conclusion that Claimant had not lost the use of his hands for all intents and purposes after obtaining a history from Claimant, reviewing Claimant's medical records, and performing a physical evaluation of Claimant, during which he observed that Claimant had a full range of motion in his wrists and remaining fingers, as well as a functional grip, and normal functioning in two of his three nerves. Dr. Kann emphasized that lack of sensation on the palmar side of Claimant's fingers did not equate to a lack of use of those fingers. (R.R. at 256a, 262a.) Instead, Dr. Kann noted that Claimant would simply have to watch his fingers as he performed tasks because he would be unable to rely upon tactile sensation to guide him, observing that Claimant's use of his right thumb, which lacked palmar sensation, to work a remote control was a good example of this. *Id.* at 262.

When viewing this testimony in the light most favorable to Employer, we cannot agree that the WCJ's reliance upon this testimony was arbitrary, as Dr. Kann thoroughly explained the basis of his opinions and identified the evidence that he relied upon in reaching them. Furthermore, we note the WCJ's explanation for his credibility finding: the WCJ stated that he was persuaded by Dr. Kann's testimony because it was supported by other testimony, including Claimant's wife's observation that Claimant would use his right pinky finger to twist the cap off of water bottles, noting that in order to do so, Claimant would use the fingers of his left hand to secure the bottle. The WCJ stated that Claimant's use of his pinky fingers in such a manner made sense because they have complete sensation and would not require him to look to see what he was doing. As such, we disagree with Claimant's assertion that the WCJ's reliance upon, and credibility determination of, Dr. Kann's testimony was arbitrary or capricious.

Relatedly, in his second argument, Claimant contends that the WCJ erred in concluding that "residual function of a single digit in a hand (the pinky) precludes a

loss of use finding of the entire hand." (Claimant's brief at 23.) However, the WCJ made no such finding.

> When a claimant alleges that his injury has resolved into a specific loss, he has the burden of proving that he has permanently lost the use of his injured body part for all practical intents and purposes. A specific loss requires more than just limitations upon an injured worker's occupational activities; a loss of use for all practical intents and purposes requires a more crippling injury than one that results in a loss of use for occupational purposes. However, it is not necessary that the injured body part be one hundred percent useless in order for the loss of use to qualify as being for all practical intents and purposes. Whether a claimant has lost the use of a body part, and the extent of that loss of use, is a question of fact for the WCJ. Whether the loss is for all practical intents and purposes is a question of law.

*Miller v. Workers' Compensation Appeal Board (Wal-Mart)*, 44 A.3d 726, 728 (Pa. Cmwlth. 2012) (quoting *Jacobi v. Workers' Compensation Appeal Board (Wawa, Inc.)*, 942 A.2d 263, 267-68 (Pa. Cmwlth. 2008) (internal citations omitted)).

Here, the WCJ did not find that residual function in one finger "precluded" a finding of specific loss of the hand. To the contrary, the WCJ stated that, in this particular case, he was not persuaded that Claimant had lost complete use of both hands for all practical intents and purposes. In so finding, the WCJ relied upon what he deemed to be credible testimony from Dr. Kann, as well as supporting testimony from Claimant and his wife. Upon thorough review of the record and accepting the WCJ's credibility determinations, we agree with the WCJ that Claimant's evidence was not sufficient to establish a permanent loss of use for all practical intents and purposes. While Claimant testified to numerous things he is unable to do, he also testified as to his ability to perform most activities of daily living, including his ability to comb his hair, clean himself, drive his truck, including operate the headlights, power windows,

14

and turn signals, pay for gas and merchandise, feed himself, sign his name, button his pants, use keys to get into his house and so forth. When considering this testimony in light of Dr. Kann's medical testimony regarding Claimant's range of motion and abilities, we cannot agree that, as a matter of law, Claimant has sustained a specific loss of both hands for all intents and purposes. *See Wise v. Workers' Compensation Appeal Board (City of Philadelphia)*, 810 A.2d 750 (Pa. Cmwlth. 2002) (upholding a WCJ's finding that there was no specific loss of the hand where the claimant could carry things such as cigarettes and soda, drive automatic transmission cars, carry up to 10 pounds, although with difficulty, write his name, and dress himself); *Irwin Sensenich Corp. v. Workmen's Compensation Appeal Board*, 327 A.2d 644, 646 (Pa. Cmwlth. 1974) (Where a claimant's medical expert testified that the claimant had lost the use of his leg for all intents and purposes as far as his occupation was concerned, but stated that he was still capable of using his leg for other purposes, we held that "Appellant herein discredited his own case," and denied specific loss benefits.).

In his third argument, Claimant again contends that there is "unequivocal" evidence in the record establishing that he suffered a disability and "it was an error for the WCJ not to issue a finding of fact regarding a disability separate and apart whether it be to the left hand, right hand, left wrist, right wrist, left upper extremity or right upper extremity." (Claimant's brief at 25.) Claimant, once again, recites the testimony of Dr. Kang, asserting that there is "unequivocal" evidence that the loss of Claimant's median nerves affects the motor function in his bilateral forearms and wrists. *Id.* at 26. For the reasons set forth above regarding the WCJ's credibility and weight of evidence determinations, we reject this argument. Further, we note that "the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster*, 721 A.2d at 1156. With regard to a finding of separate disability, we agree

with the Board that no such finding was necessary. The question of whether or not there was a disability separate and apart from the specific loss of the hands would only have been relevant if the WCJ found a specific loss of both hands, which was not the case here.

In his final argument, Claimant argues that the WCJ did not render a reasoned decision because he failed to specifically address several items of evidence, including the medical reports of Dr. Tucker, Dr. Goldstrohm, and Dr. Dunmore, two photographs of Claimant's injuries, and video surveillance of Claimant kicking a ball with his dogs. We disagree.

While a WCJ must render a "reasoned decision containing findings of fact and conclusions of law based upon the evidence" that "clearly and concisely states and explains the rationale for the decisions," 77 P.S. §834,[2] a "reasoned decision does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision," *Acme Markets, Inc. v. Workers' Compensation Appeal Board (Brown)*, 890 A.2d 21, 26 (Pa. Cmwlth. 2006). To the contrary, a decision is reasoned if it allows for adequate review by this Court under applicable review standards. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003). Here, the WCJ rendered an opinion that contained sufficient explanation for his findings of fact and conclusions of law, including an explanation as to why he found particular testimony credible, such that meaningful appellate review was possible. Furthermore, as the Board noted, "the WCJ summarized the testimony of the medical experts, who referred to the medical records at issue. The WCJ's summarization of the evidence demonstrate[d] his grasp of the evidentiary record." (Board's Op. at 13.)

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.

16

In conclusion, while the Court is certainly sympathetic to Claimant's condition and the extent of his injuries, given the aforementioned facts and credibility determinations, we are constrained to affirm the WCJ's decision granting the Claimant's review petition and awarding specific loss benefits for the loss of the left thumb and first finger. Accordingly, for the reasons set forth above, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Parks,                         :
                  Petitioner          :
                              :    No. 1444 C.D. 2017
           v.                  :
                              :
Workers' Compensation Appeal     :
Board (Ayers Line Construction, Inc.),   :
              Respondent      :

# ***ORDER***

AND NOW, this 16th day of August, 2018, the order of the Workers' Compensation Appeal Board, dated September 20, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge